**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Jaime ALVAREZ, Defendant–Appellee.**

No. 95–4038.

United States Court of Appeals,
Tenth Circuit.

Oct. 18, 1995.

Bruce C. Lubeck, Assistant United States Attorney (Scott M. Matheson, Jr., United States Attorney with him on the briefs), Salt Lake City, Utah, for Plaintiff–Appellant.

Robert L. Booker for Booker & Associates, Salt Lake City, Utah, for Defendant–Appellee.

Before ANDERSON and BRORBY, Circuit Judges, and McKAY, Senior Circuit Judge.

1. The entire encounter was video-recorded with audio. The tape was admitted into evidence before the district court and has been designated as part of the record on appeal. All facts recited that are not accompanied by a record cite have been taken from the video-audio recording.

---

1243

BRORBY, Circuit Judge.

The United States brings this appeal seeking review of the district court's order granting the defendant's motion to suppress evidence seized during a traffic stop. We have jurisdiction pursuant to 18 U.S.C. § 3731, and reverse.

## BACKGROUND

On April 14, 1994, Utah Highway Patrolman Craig Gaines observed a U–Haul rental truck traveling northbound on interstate 15. As he began to overtake the truck, Officer Gaines noticed the license plate sticker had expired. Thereafter, Officer Gaines signaled to the driver of the vehicle to pull over.

Officer Gaines walked up to the driver's side of the U–Haul.[1] The driver of the vehicle, defendant Jaime Alvarez, asked the officer if he needed the papers for the vehicle and provided the trooper with the U–Haul rental agreement and his driver's license. Mr. Alvarez's driver's license was issued by the state of Massachusetts, the rental agreement bore his name, and he indicated the truck had been rented in California and was to be taken to Boston, Massachusetts.

Officer Gaines testified Mr. Alvarez appeared nervous initially, but relaxed after his initial contact with the trooper. Officer Gaines informed Mr. Alvarez at this point that the reason he stopped the vehicle was due to the expired plates. Officer Gaines asked Mr. Alvarez to step out of the vehicle and led him to the back of the truck. The officer then asked where Mr. Alvarez was going and what cargo he was carrying. Mr. Alvarez responded that he and his companion were traveling to Boston and only moving their clothes. Officer Gaines asked who was the passenger in the vehicle, and Mr. Alvarez explained she was his girlfriend. At this point, the encounter had lasted approximately forty-five seconds.

When the expired plates were pointed out to Mr. Alvarez, he responded, "[t]hat's their fault." Officer Gaines replied that he was "exactly right." Officer Gaines then instruct-

ed Mr. Alvarez to wait at the back of the vehicle while the trooper spoke with the passenger. Officer Gaines testified he questioned the passenger to check for inconsistencies with the information provided by Mr. Alvarez. It does not appear any such inconsistencies arose during Officer Gaines' thirty-second questioning of the passenger. Officer Gaines did testify, however, that while questioning the passenger, he detected the odor of air freshener.

Officer Gaines then returned to the back of the truck to question Mr. Alvarez again. He inquired whether Mr. Alvarez was carrying any weapons or anything in the truck, to which Mr. Alvarez responded negatively. Up to this point, the encounter had lasted less than two minutes from its inception. The officer then asked whether he could search the back of the truck, and Mr. Alvarez said "Go ahead." The search ultimately resulted in the seizure of cocaine forming the basis for the charges against Mr. Alvarez.

The district court suppressed the evidence. The court concluded the initial questioning of Mr. Alvarez and the passenger was permissible, i.e., it was reasonably related to the purposes of the initial stop. The court concluded that from this point on, however, the officer's inquiries exceeded the scope of the inquiries justified by the initial stop: "Rather than follow up on the original suspicion that the vehicle was stolen ..., [Officer Gaines'] investigation began to focus on the contents of the vehicle." The district court determined the subsequent line of inquiry was valid only if it was supported by reasonable, articulable suspicion that Mr. Alvarez was carrying contraband. The facts cited by the government: Mr. Alvarez's statement he was carrying only clothes in the truck; his initial nervousness; and the presence of air freshener, did not amount to a reasonable, articulable suspicion the defendant was carrying contraband. Consequently, the district court ruled Mr. Alvarez's subsequent consent to the officer's request to search the vehicle was tainted by the illegal detention preceding it and, therefore, the evidence was suppressed.

## DISCUSSION

■ In reviewing motions to suppress, we accept the trial court's factual findings unless clearly erroneous and review de novo the ultimate determination of reasonableness under the Fourth Amendment. *United States v. Little,* 18 F.3d 1499, 1503 (10th Cir.1994) (en banc).

■ A routine traffic stop constituting an investigative detention is constitutional only if supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity. *United States v. Lambert,* 46 F.3d 1064, 1069 (10th Cir.1995). More specifically, the reasonableness of a stop must be evaluated by asking first, "whether the officer's action was justified at its inception," and second, "whether [the action] was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968).

■ Courts are to view the officer's conduct through a filter of "common sense and ordinary human experience," *United States v. Melendez–Garcia,* 28 F.3d 1046, 1052 (10th Cir.1994) (citation omitted), and in light of "the totality of the circumstances," *United States v. Fernandez,* 18 F.3d 874, 878 (10th Cir.1994). This approach is intended to "avoid unrealistic second-guessing of police officers' decisions," *Melendez–Garcia,* 28 F.3d at 1052 (citation omitted), and to accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions, *United States v. Lopez–Martinez,* 25 F.3d 1481, 1484 (10th Cir.1994).

The parties do not dispute that Officer Gaines' initial stop of the vehicle Mr. Alvarez was driving was justified due to the expired license plates on the U–Haul, nor do they dispute that the expired plates supported a reasonable suspicion the vehicle was stolen. Thus, we focus our inquiry on whether the officer's actions subsequent to the stop were justified by the officer's reasonable suspicion of unlawful activity. *See United States v. Dewitt,* 946 F.2d 1497, 1502 (10th Cir.1991), *cert. denied,* 502 U.S. 1118, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992); *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988) (citing *Florida v. Royer,* 460 U.S. 491, 498–

99, 103 S.Ct. 1319, 1324–25, 75 L.Ed.2d 229 (1983)).

■ We agree with the district court's conclusion that the initial questioning of Mr. Alvarez relating to his travel plans and cargo were permissible. Officer Gaines initially stopped the U–Haul on the concededly valid suspicion the vehicle may have been stolen. Inquiring as to travel plans and cargo is, in our judgment, reasonably related in scope to determining if a vehicle is stolen because an individual's confused or incredulous response to this inquiry could provide additional reason to suspect the vehicle is stolen. Similarly, the officer's questioning of the passenger was reasonably related in scope to circumstances surrounding the initial stop because conflicting responses between the driver and passenger could have lent support to the suspicion the vehicle was stolen.

■ The critical question, therefore, is whether the officer's second inquiry into the contents of the vehicle was justified by the officer's reasonable suspicion of unlawful activity. While the district court concluded the initial inquiry as to cargo was in fact so related, the court deemed the identical inquiry, when asked a second time, to be impermissibly and exclusively directed at finding out whether Mr. Alvarez was transporting contraband. We cannot accept this distinction.

While the record reveals the passenger gave the same responses to Officer Gaines' inquiry as did Mr. Alvarez, there is no evidence Mr. Alvarez knew this. Thus, had Mr. Alvarez actually been in possession of a stolen vehicle (which he was not), and had he further doubted whether his companion told the same story he had, he might well have changed his account of their travel plans, their cargo, or both. This, in turn, reasonably could have fueled the officer's suspicions that the vehicle was stolen. These facts, coupled with the extremely brief length of time these inquiries took, lead us to conclude the officer's second inquiry into the nature of the cargo was justified by the officer's reasonable suspicion of unlawful activity. Were we to hold otherwise, we would, in effect, be adopting a rule holding that a question, when asked once, may be reasonably related to the purposes of an initial, lawful stop, whereas that same question, if asked a second time, would not be so related and would run afoul of the Fourth Amendment. Such a rule would, in our judgment, not only be unnecessarily formalistic, it would be contrary to the very protections embodied in the Fourth Amendment, i.e., that the constitutionality of a search or seizure is to be judged by reference to what is reasonable. See Wilson v. Arkansas, —— U.S. ——, ——, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976 (1995).

Because we conclude the officer's inquiries of Mr. Alvarez were justified by the officer's reasonable suspicion of unlawful activity, the subsequent consent to search given by Mr. Alvarez could not have been tainted.

The order of the district court is, therefore, **REVERSED,** and the case is **REMANDED** for further proceedings.

McKAY, Circuit Judge, concurring:

I join in the court's judgment but for slightly different reasons. I agree with the trial court's approach of examining when the police officer decided to shift his investigation from the initial, justifiable stop to a drug investigation. The latter must be supported by articulable facts giving rise to a reasonable suspicion of criminal activity. The critical decision in this case is the point at which the officer was in possession of those triggering facts. If that point were at the stage adopted by the magistrate judge or the trial court, I would vote to sustain the trial court's decision.

A review of the videotape (R., Vol. III) reveals without question, however, that the officer had the necessary articulable facts before his efforts turned to a search for drugs. Although a close case, the strong smell of air freshener, coupled with the fact that a large truck was rented merely to transport clothes, provides a sufficient basis for additional investigation. The officer had possession of those facts before he asked to search the vehicle. Additionally, the videotape of the arrest reveals the officer telling another officer that he smelled air freshener when he initially approached the driver in the truck. Any finding to the contrary by the trial court would be clearly erroneous.

Standing alone, air freshener is not sufficient to justify a reasonable search for drugs.

However, we have repeatedly held that air freshener coupled with other indicia of criminal activity supports a reasonable brief inquiry for purposes of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The fact that air freshener may be used innocently does not mean it cannot be used under other suspicious circumstances.

While reaffirming my view that police officers must articulate reasons independent from the basis for the initial traffic stop before they may pursue an investigation for drugs, I believe such a requirement was satisfied in this case. Despite this conclusion, I believe that the court's discussion about the focus of the officer's questions is not faithful to our duty to defer to the findings of the trial court. I am persuaded that the question as to when and if an investigation shifts from the initial reason for a traffic stop to a drug investigation falls within the discretion of the trial court. I do not believe it is an issue of law for an appellate court to decide. We should accept such a finding unless clearly erroneous. I am unable to conclude that the trial court was clearly erroneous when it concluded that the officer shifted his focus to a drug investigation. Because the officer's inquiry into the contents of the truck included a question about weapons, the focus of his investigation was clearly not related to whether the vehicle was stolen.