The PEOPLE of the State of Colorado,
Petitioner–Appellant,

v.

In the Interest of H.J., Juvenile–Appellee.

No. 96SA376.

Supreme Court of Colorado,
En Banc.

Jan. 27, 1997.

ment." *People v. Hamilton,* 831 P.2d 1326, 1331–32 (Colo.1992).

A. William Ritter, Jr., District Attorney, Second Judicial District, Nathan B. Coats, Chief Appellate Deputy District Attorney, Denver, for Petitioner–Appellant.

No Appearance for Juvenile–Appellee.

Justice KOURLIS delivered the Opinion of the Court.

The People initiated this interlocutory appeal pursuant to section 16–12–102(2), 8A C.R.S. (1996 Supp.), and C.A.R. 4.1 seeking review of an order of the Juvenile Court of the City and County of Denver suppressing certain statements made by the Juvenile–Defendant (Juvenile) and suppressing a gun found during a search of the vehicle in which the Juvenile was a passenger. The juvenile court concluded that the police officers who stopped the vehicle for traffic violations illegally detained the Juvenile by asking him for his name, and therefore granted the motions to suppress. We now reverse the juvenile court's order of suppression and remand the case for further proceedings consistent with this opinion.

## I.

The Juvenile was charged by petition in delinquency with illegal possession of a handgun by a juvenile pursuant to section 18–12–108.5(1)(a), (c)(I), 8B C.R.S. (1996 Supp.). The Juvenile filed pre-trial motions seeking to suppress the gun and two incriminating statements made by him. The juvenile court

conducted a suppression hearing at which Officer Vince Lombardi testified for the prosecution and the Juvenile testified on his own behalf.

This case began as a routine traffic stop. On December 1, 1995, the Juvenile and two other adult males were riding in a Buick at approximately 10:30 at night. The Juvenile was in the back seat on the passenger side. Officers Lombardi and Rob Gray were patrolling the area and noticed that the license plate light on the Buick was out, and that the driver failed to signal before making a turn. The officers stopped the vehicle for those violations.[1]

Officer Lombardi testified that the driver could not produce valid vehicle registration or proof of insurance. Further, neither passenger claimed ownership of the vehicle. Thus, the officers suspected that the Buick was stolen. Officer Lombardi then asked both passengers for their names and dates of birth. According to Officer Lombardi, the Juvenile provided confusing information regarding his name. The officers requested that all three occupants of the vehicle exit the car and sit on the curb. They then handcuffed the Juvenile to investigate a possible false information charge.

After running a warrant check on the vehicle occupants, the officers discovered an outstanding arrest warrant for the front seat passenger. The officers took that passenger into custody and conducted a search of the Buick incident to arrest. They found a handgun in plain view on the back seat floor board behind the driver's seat. The officers then took the driver into custody and advised both adult males of their rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), while the Juvenile was present.

Immediately thereafter, the Juvenile declared that the gun was his. The testimony, however, is conflicting with regard to whether or not the Juvenile volunteered that statement. The Juvenile testified that he claimed ownership of the gun in response to the officers' questioning. Conversely, Officer Lombardi testified that he did not ask whose gun it was, but he could not remember whether his partner questioned the occupants.

The officers then arrested the Juvenile for possession of the handgun, and took him to the police station. Officer Lombardi testified that the Juvenile made another incriminating statement about the gun while inside a restroom at the police station. The Juvenile denies having made that statement.

The Juvenile filed a motion to suppress the handgun and a motion to suppress both the statement made at the site of the investigatory stop and the alleged statement made at the police station. Following the suppression hearing, the juvenile court found that the initial stop of the vehicle was valid and that the officers were justified in requesting that each occupant exit the car in order to conduct a pat-down search for weapons. However, the juvenile court further found that the officers illegally detained the Juvenile by asking him to state his name. The court explained that the officers had no reason to suspect the Juvenile of any wrongdoing because the stop involved traffic violations, and the Juvenile was merely a passenger in the stopped vehicle. Thus, the court granted both motions to suppress.

The prosecution then filed this interlocutory appeal to challenge the juvenile court's suppression order. We now hold that the officers properly asked the Juvenile for his name because they had a reasonable suspicion that the Juvenile had some involvement with a possible motor vehicle theft. We further hold that the officers seized the gun in the course of a valid search incident to the lawful arrest of the front seat passenger. Since the juvenile court did not reach the questions of custodial interrogation and voluntariness with respect to the Juvenile's statements, we remand for further proceedings on that issue. Accordingly, we reverse the order of the juvenile court, and remand the case.

1. Officer Lombardi further testified that he and Officer Gray recognized the driver and the front seat passenger as gang members based upon prior contacts with those individuals. Because the record is unclear as to the basis for or reasonableness of that suspicion, we do not rely upon it in our analysis of the case.

## II.

The sole issue in this interlocutory appeal is whether the Juvenile's Fourth Amendment rights[2] were violated, thus requiring suppression of the evidence.

The Fourth Amendment to the United States Constitution[3] proscribes all unreasonable searches and seizures. "[I]t is a cardinal principle that 'searches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted)) (emphasis in original).

■ One such exception relates to an investigatory stop.[4] The purpose of an investigatory stop is to permit a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning. *See United States v. Hickman,* 523 F.2d 323, 327 (9th Cir.1975). Investigatory stops are limited seizures within the meaning of the Fourth Amendment and must be justified by a rea-

sonable suspicion that criminal activity is afoot. *See Terry v. Ohio,* 392 U.S. 1, 20–27, 88 S.Ct. 1868, 1879–83, 20 L.Ed.2d 889 (1968).[5]

The question of reasonableness under *Terry* is twofold: "(1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related 'to the circumstances which justified the interference in the first place.'" *United States v. Harflinger,* 436 F.2d 928, 932 (8th Cir. 1970) (quotation omitted). Furthermore, in determining whether reasonable suspicion existed, we must look to the totality of the circumstances. *See United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *People v. Garcia,* 789 P.2d 190, 192 (Colo.1990). In so doing, "common sense" and "human experience" must govern. *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).

### A.

■ An officer causing a vehicle in transit to pull over is usually conducting an investigatory stop.[6] The United States Supreme

---

**2.** In the absence of a clear statement that a suppression ruling is grounded on the Colorado Constitution rather than the United States Constitution, we presume the juvenile court relied on federal constitutional law in reaching its decision. *See People v. Corpany,* 859 P.2d 865, 868 (Colo.1993).

**3.** The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. The Fourth Amendment is made applicable to the states by the Fourteenth Amendment. *See Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691–92, 6 L.Ed.2d 1081 (1961).

**4.** *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). While the *stop* in *Terry* involved a search for weapons, the Court subsequently extended *Terry* to include brief stops for questioning. *See United States v. Brignoni–Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607 (1975).

**5.** *See also Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612

(1972); *People v. Thomas,* 839 P.2d 1174, 1177 (Colo.1992); § 16–3–103(1), 8A C.R.S. (1986). Reasonable suspicion falls below probable cause, but above a mere inarticulate hunch. *See Terry,* 392 U.S. at 20–22, 88 S.Ct. at 1879–80. Thus, when an officer by means of physical force or show of authority stops and detains an individual for investigatory purposes, the officer need not have probable cause to arrest, but must nonetheless be able to articulate the specific facts that gave rise to the reasonable suspicion that criminal activity may be afoot. *See id.* at 19 n. 16, 30, 88 S.Ct. at 1879 n. 16, 1884; *United States v. Mendenhall,* 446 U.S. 544, 552, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980); *People v. Garcia,* 789 P.2d 190, 191–92 (Colo.1990).

**6.** Vehicle stops are generally viewed as seizures within the meaning of the Fourth Amendment. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979); *United States v. Morgan,* 936 F.2d 1561 (10th Cir.1991) (officer followed car in which defendant was passenger; officer had red lights flashing, exited from marked police car in uniform, and defendant yielded to show of authority); *see generally* 4 Wayne R. LaFave, *Search and Seizure,* § 9.3(a), at 109–10 n.100 (3d ed.1996).

Court has concluded that several factors can differentiate an investigatory stop from a consensual encounter, such as the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *People v. Johnson,* 865 P.2d 836, 841 (Colo.1994) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Stewart, J., joined by Rehnquist, J.)); *see also United States v. Ritchie,* 35 F.3d 1477, 1481 (10th Cir.1994) (quoting *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877).

Since most of those factors are generally present during a traffic stop, the driver of a stopped vehicle therefore is not likely to feel free to terminate the police encounter. "[I]t strains credulity to imagine that any citizen, directly on the heels of having been pulled over to the side of the road by armed and uniformed police officers in marked patrol cars, would ever feel 'free to leave' or 'at liberty to ignore the police presence and go about his business[.]' " *State v. Retherford,* 93 Ohio App.3d 586, 639 N.E.2d 498, 507 (1994) (quoting *Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991)).

■ Therefore, the officer must have a reasonable suspicion that the driver is violating the law in some way to conduct a traffic stop. *See Nefzger v. Department of Revenue,* 739 P.2d 224, 229 (Colo.1987). The officer may obtain identification and registration information from the driver in connection with that stop.[7]

■ While the stopping of the vehicle in a practical sense impacts all of the occupants, the officer need not initially have a reasonable suspicion as to all occupants. *See United States v. Martinez,* 808 F.2d 1050, 1054–55 (5th Cir.1987). Generally, the detention of

the passengers in a stopped vehicle is merely coincidental with the detention of the driver.

The issue in this case is whether the questioning of the passengers of the Buick was lawful under the totality of the circumstances surrounding the vehicle stop.

### B.

■ Turning to the facts, we begin by noting that the initial traffic stop was proper. The vehicle's license plate light was out, in contravention of section 42–4–206(3), 17 C.R.S. (1996 Supp.). In addition, the driver violated sections 42–4–903 and 42–4–608, 17 C.R.S. (1996 Supp.), by failing to signal before making a turn. Those traffic violations provided the officers with reasonable suspicion to justify the traffic stop.

The officers' initial reasons for stopping the vehicle related only to the driver of the Buick. However, the officers in this case developed a suspicion that the car in which the Juvenile was a passenger was stolen, and that all three occupants of the vehicle might have been involved in the theft of the Buick. Thus, we must now determine whether it was reasonable for the officers to question the passengers of a suspected stolen vehicle.[8]

■ It was reasonable for the officers to suspect that the Buick may have been stolen. Subject to exceptions not applicable here, all owners of motor vehicles must properly register their vehicles. *See* § 42–3–103, 17 C.R.S. (1996 Supp.). Insufficient proof of registration papers for an automobile provides reasonable suspicion that the car may be stolen, at a minimum justifying further investigation. *See United States v. Miller,* 84 F.3d 1244, 1251 (10th Cir.1996) (vehicle stopped for speeding; driver's inability to produce proof of registration provided officer with reasonable suspicion that vehicle might be stolen); *United States v. Fernandez,* 18 F.3d 874, 879 (10th Cir.1994) ("[D]efendant's

---

7. *See* § 42–3–112(8), 17 C.R.S. (1996 Supp.) (registration card for vehicle shall be subject to inspection by any peace officer).

8. In this case, we conclude that the officers had a reasonable suspicion that the passengers were involved in a crime. That suspicion validates the level of questioning in which the officers engaged. We do not reach the issue of whether police officers must always have reasonable suspicion in order to question passengers of a stopped vehicle, or whether under some circumstances such questioning would be viewed as a consensual interview.

lack of valid registration, license, bill of sale, or some other indicia of proof to lawfully operate and possess the vehicle in question [gives] rise to objectively reasonable suspicion that the vehicle may be stolen."); *United States v. Harflinger,* 436 F.2d 928, 930–31 n. 2 (8th Cir.1970) (neither occupant of a stopped vehicle could produce proper registration papers for the automobile which was licensed to one other than occupants; that was a factor in providing police with probable cause to arrest both occupants for automobile theft).

■ Here, Officer Lombardi testified that he believed the Buick was stolen because no one in the vehicle could produce valid registration papers. The resultant suspicion that the car might have been stolen was objectively reasonable.

■ Given that suspicion, the officers then had reason to suspect that the Juvenile and the front seat passenger may have been involved in criminal activity related to the possible theft of the Buick. Thus, it was reasonable for the officers to detain and question those two passengers. Officers may reasonably suspect that a passenger in a vehicle suspected of being stolen participated in the crime of stealing that vehicle. *See United States v. Torres–Sanchez,* 83 F.3d 1123, 1127 (9th Cir.1996) (following a traffic stop, officer reasonably believed vehicle was stolen and therefore could properly question occupants of vehicle).

Occupants of a car differ from, for example, customers in a store or passengers on a public bus. Occupants of a private vehicle are travelling together by choice and thus may be assumed to have some personal or business association with one another. Knowledge or suspicion that one of the occupants has been involved in criminal activity occurring within the car, or involving the car itself, serves as a basis for a reasonable suspicion that the other occupants may be participants in that activity. *See State v. Taylor,* 62 Or.App. 586, 661 P.2d 569 (1983). Therefore, we conclude that since the officers had a reasonable suspicion that the car was stolen, they had a basis for stopping and questioning the passengers in the vehicle, including the Juvenile.

■ The officers were then entitled to obtain the names and birth dates of those two people in order to check for outstanding arrest warrants. Such detention is brief and minimally intrusive. *See United States v. Alvarez,* 68 F.3d 1242, 1245 (10th Cir.1995) (questioning passenger of suspected stolen vehicle as to travel plans and cargo reasonably related to circumstances of stop), *cert. denied,* —— U.S. ——, 116 S.Ct. 1436, 134 L.Ed.2d 557 (1996); *People v. Cobb,* 690 P.2d 848, 852 (Colo.1984) (reasonable suspicion that all three occupants of stopped vehicle were involved in criminal activity; properly detained occupants to obtain names and birth dates, and to run check for outstanding warrants); *see also* § 16–3–103(1), 8A C.R.S. (1986) (peace officer may stop any person whom he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name and address, identification if available, and an explanation of his actions).

We conclude that the officers had a valid purpose for the investigatory stop and did not exceed the proper scope of that stop in their questioning.

### III.

The juvenile court suppressed the handgun found on the back seat floor board and the two incriminating statements the Juvenile made. That court concluded that such evidence was derived from an unlawful detention of the Juvenile. We have determined that the Juvenile's detention was lawful, thereby removing the taint of illegality. We now turn our inquiry to the specific evidence suppressed by the juvenile court.

### A.

We first conclude that the gun was improperly suppressed, because the officers seized the gun in a search incident to the lawful arrest of the front seat passenger.[9]

---

9. Seizure of the gun may also have been supportable pursuant to a protective weapons search.

Since we conclude that it was lawfully seized incident to an arrest, we do not reach that issue.

■ We have concluded that the officers were entitled to question the Juvenile as a passenger of the Buick. Similarly, they were entitled to question the front seat passenger about his name and date of birth. In connection with that permissible questioning, they discovered the existence of an outstanding warrant for the front seat passenger's arrest and then executed that warrant by arresting him. Incident to that arrest, the police officers searched the Buick. The officers found the handgun in plain view on the back seat floor board.

■ Generally, the scope of a search incident to an arrest is limited to the person of the arrestee and the area within the arrestee's immediate control. *See United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969); *People v. Hufnagel,* 745 P.2d 242, 245–48 (Colo.1987). However, when an officer has made a lawful custodial arrest of an occupant of a vehicle, the officer may search the entire interior of the passenger compartment, even if the subject has already been removed from the vehicle. *See New York v. Belton,* 453 U.S. 454, 460–62, 101 S.Ct. 2860, 2864–65, 69 L.Ed.2d 768 (1981); *United States v. Cotton,* 751 F.2d 1146, 1148–49 (10th Cir.1985). The authority to search the passenger compartment incident to arrest is automatic, and does not depend upon the specific facts of each case. *See Robinson,* 414 U.S. at 235, 94 S.Ct. at 476–77.

In this case, the officers arrested the front seat passenger before searching the Buick. *See Smith v. Ohio,* 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990). The officers then seized the handgun from the interior of the automobile. Thus, the search was permissible and the handgun was lawfully seized.

### B.

Although we have concluded that the officers lawfully detained the Juvenile by re-

questing that he state his name, we cannot resolve the issues concerning the Juvenile's two incriminating statements. Because the juvenile court suppressed the statements as the product of an unlawful detention, it made no factual findings on the issues of custodial interrogation and voluntariness regarding those two statements.[10] Further, the testimony is in conflict as to whether or not the Juvenile volunteered the first statement, and whether or not he made the second statement at all.

■ In the absence of specific findings of fact and conclusions of law by the juvenile court concerning the circumstances under which the Juvenile's statements were made, our appellate review function is hindered. *See People v. Sutherland,* 886 P.2d 681, 688 (Colo.1994). Therefore, we remand this case to the juvenile court to consider evidence bearing on whether the Juvenile's initial statement during the investigatory stop and his alleged statement at the police station were made voluntarily under the totality of the circumstances. *See id.*

### IV.

In conclusion, we reverse the order of the juvenile court suppressing the gun and the statements made by the Juvenile. We hold that the Juvenile was not illegally detained when the officers asked him to state his name and date of birth. We further hold that the gun was improperly suppressed. We remand the case to the juvenile court for further proceedings consistent with this opinion.

---

**10.** The juvenile court did "not even consider" the argument that the Juvenile's first statement was made while under custodial interrogation, be-cause of its initial ruling concerning contact with the Juvenile.