**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

MICHAEL JOHN TOLEDO,

　　　　Defendant - Appellant.

No. 97-3065
(D. Ct. No. 96-10069-01)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

On December 9, 1996, the defendant pleaded guilty to possessing 200

pounds of marijuana with intent to distribute, in violation of 21 U.S.C.

§ 841(a)(1) and 18 U.S.C. § 2. He did so on the condition that he be allowed to

appeal the district court's denial of his motion to suppress evidence found in the

trunk of his car. The defendant was sentenced on February 21, 1997, and this is

his appeal of the district court's ruling on the motion to suppress. We take

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

jurisdiction under 28 U.S.C. § 1291 and affirm.

## Background

In the afternoon of October 11, 1996, Kansas Highway Patrol Troopers Rich Jimerson and John Rule were traveling on I-70 when their radar unit indicated that the defendant's eastbound vehicle was exceeding the speed limit. The defendant's car had a California license plate. The troopers pulled Mr. Toledo to the side of the road, where Mr. Toledo produced papers relating to the rental car that he was driving. Upon being questioned, Mr. Toledo told Trooper Jimerson that he was moving to North Carolina to get a new job in Raleigh. Jimerson noticed a strong odor emitting from Christmas-tree-shaped air fresheners in the brand new rental car. Mr. Toledo became visibly nervous during his exchange with Trooper Jimerson.

When Jimerson returned to the patrol car to write up a warning citation for speeding, he noticed the rental documents indicated that the car was to be returned to California rather than North Carolina. Jimerson asked Trooper Rule to question Toledo about this discrepancy. The defendant then changed his story, telling Trooper Rule that he was going to visit his family in New Jersey after he stopped to visit friends and possibly look for a job in North Carolina. Meanwhile, a computer check that Jimerson had run on the defendant revealed that Mr. Toledo had a prior conviction for possession of drugs with intent to distribute.

2

Jimerson gave the defendant the citation and told him that he was free to leave. Jimerson then asked the defendant if he could ask him a few questions, and the defendant agreed. The trooper eventually asked to look in the trunk. The defendant replied that he preferred to leave. At this point, Jimerson reiterated that the defendant was free to leave, but stated that he suspected Toledo of transporting drugs and explained that the officers were going to temporarily detain the car for a canine sniff. It would have taken ten to twenty minutes for a dog to arrive.

The defendant said he did not want to wait and gave the trooper permission to look in the trunk. Before looking in the trunk, Jimerson informed the defendant that he did not have to open it; they could wait for the dog to arrive from the nearby town of Colby (about two miles away), which they could see from their position on I-70. The defendant nonetheless opened the trunk, and Jimerson readily detected a smell of marijuana. The officers discovered about 200 pounds of marijuana in containers in the trunk. Mr. Toledo contends that this evidence should be excluded from his case because the troopers detained his car in violation of the Fourth Amendment. He argues that his consent to the search was ineffective because it was caused by an illegal detention and was not voluntarily given.

**Discussion**

## I. The <u>Terry</u> Stop

"In reviewing a denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law which we review de novo." <u>United States v. Botero-Ospina</u>, 71 F.3d 783, 785 (10th Cir. 1995) (citations omitted).

A routine traffic stop is a seizure within the meaning of the Fourth Amendment. <u>See</u> <u>United States v. Wood</u>, 106 F.3d 942, 945 (10th Cir. 1997). For purposes of constitutional analysis, we treat traffic stops as investigative detentions rather than custodial arrests. <u>See</u> <u>id.</u> (citing <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 (1984)). We therefore use the two-part inquiry for investigative detentions set forth in <u>Terry v. Ohio</u>, 392 U.S. 1, 19-20 (1968).

The first prong of <u>Terry</u> requires us to ask whether the officers' action was justified at its inception. <u>See</u> <u>id.</u> at 20. On appeal, the defendant does not argue that the officers lacked the authority to pull the defendant's car over for speeding. Thus, the defendant concedes that the first part of the <u>Terry</u> standard is met here.

The second inquiry is whether the officers' actions during the detention were reasonably related in scope to the circumstances that justified the interference in the first place. <u>See</u> <u>id.</u> In a normal traffic-stop situation, <u>Terry</u>'s

4

second prong requires the officer to allow the driver to leave the scene after the officer issues a citation and after the driver produces a valid license and proof that she is entitled to operate the car. See United States v. Lee, 73 F.3d 1034, 1038-39 (10th Cir. 1996). An officer may expand a stop beyond its initial scope, however, if the suspect consents to further questioning, see United States v. McNeely, 6 F.3d 1447, 1451 (10th Cir. 1993), or if the detaining officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity," United States v. Lambert, 46 F.3d 1064, 1069 (10th Cir. 1995) (citations and internal quotation marks omitted).

In this case, Trooper Jimerson continued questioning the defendant after giving him a warning citation and after the defendant had provided proof that he was entitled to operate the car. The discovery of the drugs occurred as a result of that extended stop. Thus, we must consider whether either of the two exceptions noted above applies here. If neither exception applies, then we must suppress the evidence as the fruit of an illegal detention. See, e.g., Wood, 106 F.3d at 948.

The government argues that because Trooper Jimerson informed Mr. Toledo that he was free to go, the rest of the exchange became consensual, even though the officers intended to detain the defendant's car. The government's argument is flawed for two reasons. First, because a reasonable cross-country traveler in the defendant's shoes -- i.e., one standing alongside an interstate

5

highway -- would not have felt truly "free to go" without his car, the officers effectively seized the defendant during the continued questioning. See United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991) (noting whether a seizure occurs depends on whether a reasonable person would believe she is not free to go under the circumstances). More importantly, however, the government admittedly detained the car itself without the defendant's consent. Just as with a person, the police cannot conduct a nonconsensual investigative detention of personal property unless they have a reasonable, articulable suspicion of criminal activity. See United States v. Place, 462 U.S. 696, 702-10 (1983) (applying Terry principles to personal property).

Because the defendant did not consent to his continued detention, or to the detention of his car, we must determine whether the police had the necessary "particularized and objective basis," Lambert, 46 F.3d at 1069, for detaining the defendant's car without his permission. "Whether . . . an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend on any one factor, but on the totality of the circumstances." United States v. Soto, 988 F.2d 1548, 1555 (10th Cir. 1993) (citations omitted). Four different factors, taken together, provided the officers with the requisite reasonable suspicion in this case.

First, the defendant gave a self-contradictory account of his travel plans.

6

He told one trooper that he was going to North Carolina to look for a job; he told the other trooper that he was going to North Carolina and New Jersey to visit friends, and that he would possibly look for work in North Carolina. The first statement also conflicted with the defendant's rental agreement, which indicated that the car was to be returned in California rather than North Carolina. Inconsistent stories like these may support a finding of reasonable suspicion. See United States v. Koop, 45 F.3d 1450, 1453-54 (10th Cir. 1995).

Second, the rental car emitted a strong odor of air freshener. Because drug couriers often use air freshener to mask the smell of narcotics, "we have repeatedly held that air freshener coupled with other indicia of criminal activity supports a reasonable brief inquiry for purposes of [Terry]." United States v. Alvarez, 68 F.3d 1242, 1246 (10th Cir. 1995) (McKay, J., concurring). In this case, the heavy scent of air freshener was particularly suspicious, given the fact that the car was new.

Third, the defendant had a previous drug conviction. While this information alone could never justify a seizure, see United States v. Sandoval, 29 F.3d 537, 542 (10th Cir. 1994), it can combine with other items to provide the basis for a Terry stop, see id. (citing cases); United States v. McCranie, 703 F.2d 1213, 1218 (10th Cir. 1983).

Fourth, the defendant acted nervously. As with criminal history, we do not

place a great reliance on this factor, but it does weigh in the calculus against the defendant. See Soto, 988 F.2d at 1556.

These four factors together established a basis of suspicion that suffices under Terry to justify the brief detention. Our conclusion does not contradict United States v. Wood, 106 F.3d 942 (10th Cir. 1997), relied upon by the defendant. In Wood, which is also a highway stop case, we found that the factors relied on by the district court did not give rise to a reasonable suspicion of criminal activity. The defendant had fast food wrappers and other trash in his car, he had open maps out, he misidentified the place where he picked up his rental car, and he described somewhat expensive travel plans despite being temporarily unemployed. See id. at 944. Here, the presence of the air fresheners is a more persuasive indicator of criminal activity than the presence of commonplace food wrappers in Wood. Moreover, while the defendant in Wood gave erroneous information to the police, the error was not of a type that suggested an intent to conceal criminal activity. See id. at 947. Here, the defendant's inconsistent statements regarding the true purpose of his cross-country travel suggest illicit activity.

For the above reasons, we conclude that the troopers had the particularized and objective suspicion necessary to lengthen the Terry stop. Therefore, they did not act unconstitutionally in questioning the defendant and holding the

defendant's car briefly while preparing to call a dog to the scene. Cf. United

States v. Brown, 24 F.3d 1223, 1226 (10th Cir. 1994) (finding that thirty-minute

investigative detention of defendant and his car for purpose of conducting canine

sniff did not violate the Fourth Amendment).

## II. Inevitable Discovery

The defendant's second argument is that his consent to the search was

involuntary and therefore must lead to exclusion of the evidence. The district

court rejected this argument on two different grounds. First, the district court

found that the defendant's consent to the search was, in fact, voluntary. Second,

the district court found that even if the defendant's consent was not voluntary, the

inevitable discovery rule allowed for admission of the evidence. We need not

reach the consent issue here because we affirm on the second ground.

Evidence obtained illegally and subject to exclusion can be introduced at

trial if the prosecution can show that, absent the illegality, an independent

investigation inevitably would have led to discovery of the evidence through

lawful means. See Nix v. Williams, 467 U.S. 431, 444 (1984); see also United

States v. Larsen, 127 F.3d 984, 986 (10th Cir. 1997) (holding that independent

investigation need not be ongoing at time of illegal police conduct).

Even if the consent was invalid, the drug-sniffing dog was an independent

means of investigation that inevitably would have led to the lawful discovery of

9

the marijuana in this case. There is no doubt that the dog would have arrived on the scene. As the district court pointed out, the troopers intended to call the drug-sniffing dog and were ready to do so. They chose not to call for the dog only because the defendant indicated that they could examine the trunk of the car.

Furthermore, the dog was a lawful means of investigation. The first part of this order establishes that the extended detention of Mr. Toledo was justified by the officers' particularized and objective suspicions. We have held that an extended detention of almost forty minutes spent waiting for a drug-sniffing dog did not violate the Fourth Amendment. See United States v. Villa-Chaparro, 115 F.3d 797, 802-03 (10th Cir.), cert. denied, 118 S. Ct. 326 (1997). The evidence showed that in this case it would have taken ten to twenty minutes for the dog to arrive from Colby, a town that was only two miles away.

Finally, use of the dog would have led to discovery of the evidence. As the district court noted in its opinion, given the manner in which the marijuana was packaged in the trunk, a trained dog would have been alerted to it. At that point, a search of the trunk would have been supported by probable cause and therefore acceptable under the Fourth Amendment. See United States v. Stone, 866 F.2d 359, 364 (10th Cir. 1989) (noting that trained dog's alerting to presence of drugs provides probable cause for search). For these reasons, the inevitable discovery rule justifies the introduction of the evidence.

10

## Conclusion

The state trooper was justified in briefly detaining the defendant's car in this case. Regardless of whether the defendant's subsequent consent to the search of his trunk was voluntary, the evidence inevitably would have been discovered through other lawful means. Therefore, we AFFIRM the decision of the district court.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

11

**No. 97-3065, UNITED STATES v. TOLEDO**

McKAY, Circuit Judge, dissenting:

The majority's attempt to distinguish <u>United States v. Wood</u>, 106 F.3d 942 (10th Cir. 1997), is unpersuasive. <u>Wood</u> and this case involve the same arresting officer. In both cases the officer stated that the detainees appeared nervous. The officer ran computer checks on the detainees in both cases and discovered that each had a prior drug arrest or conviction. Mr. Wood gave contradictory statements to the officer concerning the origin city of his rental car. <u>See</u> <u>id.</u> at 944. Mr. Wood first stated he rented the car in San Francisco, and then confirmed that the rental car documents indicated the car was rented in Sacramento. <u>See</u> <u>id.</u> Mr. Toledo initially told the officer he was going to North Carolina to begin a new job, and then said he was going to North Carolina to visit friends and look for a job. <u>See</u> Appellee's Br. at 2. In <u>Wood</u>, the officer told the defendant he was free to go, and then asked him if he would answer some questions. <u>See</u> <u>Wood</u>, 106 F.3d at 944. Mr. Wood's reply was "equivocal." <u>Id.</u> In response to the officer's questions, Mr. Wood stated he had no narcotics or weapons, and told the officer he would not consent to a search of his car. <u>See</u> <u>id.</u> The officer then told Mr. Wood that "he was detaining the car and its contents . . . to subject it to a canine sniff." <u>Id.</u> In the case at bar, the officer told Mr. Toledo he was free to go, and then asked him if he would mind answering a few questions. <u>See</u> Appellee's Br. at 3. In response to the officer's questions, Mr.

Toledo stated that he had no contraband in the car. See id. The officer then asked Mr. Toledo if he could look in the trunk of the car. See id. Mr. Toledo replied that he would "rather be on his way." Id. The officer then told Mr. Toledo he was detaining the car while a drug-sniffing dog was called to the scene. See id.

The primary difference between Wood and this case is that Mr. Toledo acquiesced to the search of his car after he was told that his car was being detained. Another difference is that in Wood, the officer's reasonable suspicion was partially premised on the presence of fast-food wrappers and open maps in the vehicle. See Wood, 106 F.3d at 947. In the case before us, the officer's reasonable suspicion was partially premised on the defendant's use of an air freshener in a rental car. See Appellee's Br. at 9. Because the other factors bolstering reasonable suspicion are so similar in both cases, and because we found no reasonable suspicion existed in Wood, the majority opinion in this case essentially states that the presence of air freshener in a rental car is a valid basis for an officer's reasonable suspicion although the presence of fast-food wrappers and open maps is not.

This court has stated that "[s]tanding alone, air freshener is not sufficient to justify a reasonable search for drugs, [but] coupled with other indicia of criminal activity, [it] supports a reasonable brief inquiry." United States v. Alvarez, 68

2

F.3d 1242, 1245-46 (10th Cir. 1994). On this record, I do not believe the officer had enough indicia of criminal activity to justify expanding his inquiry from a routine traffic stop into a search for contraband.

In addition to the presence of an air freshener in a rental car,[1] the arresting officer based his reasonable suspicion that Mr. Toledo was carrying contraband on factors that this court has previously distrusted, i.e., seemingly contradictory statements about travel plans which might have an innocuous explanation, the nervousness of a detainee, and a detainee's prior narcotics history. See Wood, 106 F.3d at 946-48. Although "contradictory or implausible travel plans can contribute to a reasonable suspicion of illegal activity," United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997), "[o]nce [a defendant has] corrected his error, suspicious inconsistencies virtually evaporate[] and any justification his error yield[s] for further investigation dissipate[s]." Wood, 106 F.3d at 947. Mr. Toledo did correct the error he made to the officer regarding his travel plans, and his itinerary was hardly implausible.

We are then left with Defendant's nervousness and his prior narcotics history. "After stripping away the factors which must be disregarded because

---

[1] The use of air freshener in a rental car has at least one plausible, innocent explanation, i.e., one might use air freshener in a rental car to mask an odor of cigarettes remaining in the vehicle from a previous driver. Although the car was "new," it had been driven 1600 miles.

they are innocuous, we are left with [Defendant's] nervousness and his prior narcotics history--both factors which this court has cautioned are of only limited significance in determining whether reasonable suspicion existed." Wood, 106 F.3d at 948. In Wood we stated that "'nervousness is of limited significance in determining reasonable suspicion and . . . the government's repetitive reliance on . . . nervousness . . . as a basis for reasonable suspicion . . . must be treated with caution.'" Id. (quoting United States v. Fernandez, 18 F.3d 874, 879 (10th Cir. 1994)). "To sanction a finding that the Fourth Amendment permits a seizure based on such a weak foundation would be tantamount to subjecting the traveling public to virtually random seizures, inquisitions to obtain information which could then be used to suggest reasonable suspicion, and arbitrary exercises of police power." Id.

I do not believe that the officer had a reasonable suspicion based on articulable facts which would justify his detention of the car for a canine sniff or allow him to seek consent to search the car. See id. at 946; Alvarez, 68 F.3d at 1245. Although each of the factors relied upon by the officer could legitimately provide some basis for reasonable suspicion, individually and collectively these factors provide a weak foundation for this conclusion. This detention was not justified, and "[r]eliance on the mantra 'the totality of the circumstances' cannot metamorphose these facts into reasonable suspicion." Wood, 106 F.3d at 948. I

4

cannot agree with the majority's view that Mr. Toledo's use of air freshener, his statements about his travel plans, his nervousness, and his past narcotics history are enough to justify a reasonable suspicion sufficient to overcome a citizen's constitutional protections. Finding that these factors constitute reasonable suspicion provides a tempting bootstrap for police officers to utilize when they catch the guilty by whatever means necessary and then must justify those means under judicial scrutiny.

Because the use of the inevitable discovery doctrine in this case depends on the illegal detention, it cannot support the trial court's refusal to suppress the seized evidence.

I am also not persuaded that the consent to search was voluntary. The government bears the burden of proving the consent to search was voluntary, based on the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 222, 227 (1973); United States v. McCurdy, 40 F.3d 1111, 1119 (10th Cir. 1994). Consent cannot be the product of express or implied duress or coercion. See Schneckloth, 412 U.S. at 227. Prior to his ultimate acquiescence, Mr. Toledo refused to consent to a search of his car. He changed his mind only after he was illegally detained, and after the uncertain length of the detention was made clear to him by the officers. Mr. Toledo was stopped on a remote stretch of Kansas highway. Mr. Toledo was told that his car (thus he, himself,) would be

5

detained until a canine drug unit arrived from Colby, a nearby town. The length of time Mr. Toledo would have to wait for the dog to arrive was uncertain, but could be at least twenty minutes. The government failed to carry its burden of showing that the consent was voluntary. In fact, the record supports only one conclusion--that the duress of the illegal detention caused Mr. Toledo to cave in and allow the officers to search his car.

The notion that innocent as well as guilty persons can legally be subjected to the police conduct in this record is not consistent with the Fourth Amendment and cases to the contrary. It is an unwarranted extension of police intrusion into the lives of our citizens. Therefore, I dissent, and would reverse the district court's decision.