The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Stephanie Spring CHAMBERLAIN, Defendant–Appellee.

No. 09SA124.

Supreme Court of Colorado, En Banc.

May 10, 2010.

Pete Hautzinger, District Attorney, Twenty–First Judicial District, Mark Scarr, Deputy District Attorney, Grand Junction, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Jody McGuirk, Deputy State Public Defender, Grand Junction, Colorado, Attorneys for Defendant–Appellee.

Justice COATS delivered the Opinion of the Court.

The People brought an interlocutory appeal pursuant to section 16–12–102(2), C.R.S. (2009), and C.A.R. 4.1, challenging the district court's suppression of drugs and drug paraphernalia seized from the defendant's vehicle during a search incident to her arrest. Although the district court initially denied the motion, it entertained a motion for reconsideration and reversed its earlier ruling following the release of *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Because it was undisputed that the defendant had already been arrested, handcuffed, and placed in a patrol car at the time of the search and because it would not have been reasonable for the officers to believe that the defendant's vehicle might contain evidence relevant to false reporting, the crime for which she was arrested, the suppression order is affirmed, and the case is remanded for further proceedings consistent with this opinion.

**I.**

After the discovery of a small amount of drugs and a glass pipe in Stephanie Chamberlain's vehicle, she was charged with possession of one gram or less of methamphetamine and possession of drug paraphernalia. She subsequently moved to suppress the items seized from her vehicle as the product of an illegal search. After a hearing on that motion and after further argument on a motion to reconsider, the district court made the following relevant findings.

On December 20, 2008, an officer saw the defendant's car inadequately signal before turning into a gas station and approached her as she stood by the fuel pumps with her approximately eight-year-old child still in the car. Upon request, she gave the officer her driver's license, registration, and proof of insurance, and when prompted, she indicated that she had been living at a different address from the one listed on her license since the end of November. After a check of her driver's license and subsequent call to another officer revealed that she had been ticketed for another traffic offense less than two weeks earlier and that she had provided the ticketing officer from that offense with the old address on her driver's license, the defendant was arrested for false reporting, handcuffed, and placed in a patrol car. Officers then searched the passenger compartment of the defendant's car and found a glass pipe and a baggie containing less than a gram of methamphetamine.

The district court initially found that the evidence retrieved from the passenger compartment of the defendant's vehicle was lawfully seized pursuant to a search incident to arrest, and it therefore denied the motion to suppress. Following release of the United States Supreme Court's opinion in *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the court entertained a motion to reconsider and reversed its earlier ruling. Applying its understanding of the holding in *Gant,* the district court found, in

light of the fact that the defendant had already provided the officers with her driver's license, registration, and proof of insurance, it would not have been reasonable for them to believe any other evidence of false reporting would be found in her car.

The People immediately filed an interlocutory appeal in this court pursuant to section 16–12–102(2), C.R.S. (2009), and C.A.R. 4.1.[1]

## II.

In *Arizona v. Gant*, the Supreme Court revisited its jurisprudence concerning the search of vehicles incident to the arrest of a recent occupant. Although it acknowledged that the holding of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), had been widely understood to permit a search of the passenger compartment of a vehicle whenever a recent occupant was arrested, regardless of the likelihood that he might actually be able to access the vehicle, the five-member majority rejected this interpretation. Instead it reasoned that this reading of *Belton* would "untether the rule from the justifications underlying the *Chimel*[2] exception—a result clearly incompatible with our statement in *Belton* that 'it in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.' " *Gant*, —— U.S. at ——, 129 S.Ct. at 1719 (quoting *Belton*, 453 U.S. at 460 n. 3, 101 S.Ct. 2860). It therefore held "that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest *only* when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* (emphasis added).

Although the outcome in *Belton* would be justified by even the narrower rule of decision articulated by the *Gant* majority, largely because the sole arresting officer in *Belton* had been unable to adequately secure the four occupants of the vehicle, the same could not be said of *Thornton v. United States*, 541

U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004). In *Thornton* the defendant was already handcuffed inside a patrol car before any search of his vehicle took place. 541 U.S. at 618, 124 S.Ct. 2127. Explicitly relying on Justice Scalia's concurring opinion in *Thornton*, however, the majority explained the outcome of that case as resting on the likelihood that additional evidence of the crime for which the defendant had been arrested might be found in his vehicle. *Gant*, —— U.S. at ——, 129 S.Ct. at 1719. Conceding that it did not follow from *Chimel*, the Court nevertheless concluded "that circumstances unique to the vehicle context also justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " *Id.* (quoting *Thornton*, 541 U.S. at 632, 124 S.Ct. 2127 (Scalia, J., concurring in the judgment)). The Court therefore held that although a search of the passenger compartment of a vehicle is not authorized solely by the arrest of a recent occupant, it can be authorized on the basis of either a properly circumscribed *Chimel* rationale or this additional "evidence gathering" rationale. *See id.*

Apart from its reference to Justice Scalia's concurring opinion in *Thornton*, the majority elaborated on its second justification primarily by way of example, noting that "(i)n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.... But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* As the majority expressly noted, both *Belton* and *Thornton* involved initial arrests for drug offenses. While these examples might suggest a pure "nature-of-the-offense" exception, in which a reasonable belief is held to exist whenever the crime of arrest is one for which evidence is possible and might conceivably be found in the arrestee's vehicle, *see* 3 Wayne

---

1. Because the People did not expressly assert a good faith exception to the exclusionary rule in either the trial court or their appeal to this court, we do not address that issue in this opinion. *See People v. Crippen*, 223 P.3d 114, 116 (Colo.2010).

2. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

R. LaFave, *Search & Seizure* § 7.1, at 111–12 (4th ed. Supp.2009), such a non-case-specific test would suffer from objections similar to those that *Gant* condemned in the broad reading of *Belton.*

The nature of the offense of arrest is clearly intended to have significance, and in some cases it may virtually preclude the existence of real or documentary evidence, but a broad rule automatically authorizing searches incident to arrest for all other offenses cannot be reconciled with the actual holding of *Gant.* Unlike simple traffic infractions like failing to signal, the driving-under-restraint type of offense for which Gant was arrested necessarily requires proof of awareness, or at least constructive notice, of the particular restraint being violated, making documentary evidence in the form of official notice a possible object of a search. *See State v. Williams,* 144 Ariz. 487, 698 P.2d 732, 734 (1985). Nevertheless, both the majority and concurring opinions had little difficulty in declaring the crime of arrest in *Gant* to be an offense for which the police could not expect to find evidence in the passenger compartment of his car. Some reasonable expectation beyond a mere possibility, whether arising solely from the nature of the crime or from the particular circumstances surrounding the arrest, is therefore clearly contemplated by the Court.

The Court's use of phrases like "reasonable to believe" and "reasonable basis to believe" is a further indication that it intends some degree of articulable suspicion, a standard which it has previously acknowledged in its Fourth Amendment jurisprudence as meriting official intrusion. While this particular language is often used synonymously with probable cause, in light of the automobile exception, which already provides an exception to the warrant requirement whenever police have probable cause to believe an automobile contains evidence of a crime, *see, e.g., Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), a requirement of probable cause in this context would render the entire second prong of the *Gant* search-incident-to-arrest exception superfluous. For this reason, and because the majority at several points requires only a reasonable belief that evidence "might" be found, it seems more likely that the Court intended a lesser degree of suspicion commensurate with that sufficient for limited intrusions, like investigatory stops. *Compare Gant,* —— U.S. at ——, 129 S.Ct. at 1719 (allowing search of vehicle incident to arrest when it is "reasonable to believe evidence relevant to the crime of arrest *might be found* in the vehicle" (emphasis added) (internal quotation omitted) ) *with Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (allowing stop when an officer could "reasonably conclude ... that criminal activity *may be afoot,*" and allowing a frisk for weapons where the officer could "reasonably conclude ... that the persons with whom he is dealing *may be armed and presently dangerous.*" (emphases added) ); *see also* LaFave, *supra,* § 7.1 at 111 (comparing the language used in *Gant* to that used in *Terry* ).

At least one of the dissenting justices in *Gant* apparently understood the majority to intend some such "reasonable suspicion" standard. *See Megginson v. United States,* —— U.S. ——, ——, 129 S.Ct. 1982, 1982, 173 L.Ed.2d 1288 (2009) (Alito, J., dissenting) (arguing that the Court should do more than remand for reconsideration in light of *Gant* because the case "appears to present an important question regarding the meaning and specificity of the reasonable suspicion requirement in *Gant* "). A hybrid standard, permitting limited intrusions of a specific kind based on less than probable cause, once probable cause of a crime exists, is also not without analog. *See Davis v. Mississippi,* 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) (suggesting that less than probable cause may be needed to detain for fingerprinting); *see also* Crim. P. 41.1(c) (permitting nontestimonial identification upon a showing of probable cause to believe an offense has occurred and "reasonable grounds, not amounting to probable cause to arrest, to suspect that the person ... committed the offense"); Unif. R.Crim. P. 436, 10 U.L.A. 79 (1992).

In this case, the district court found that the defendant was arrested for the crime of false reporting as the result of her concession that she no longer lived at the address ap-

pearing on the driver's license she had presented without qualification during an earlier stop. The court also found as a matter of fact that, at the time the police searched her vehicle, they were already in possession of the driver's license listing the defendant's former address, her registration, and her proof of insurance. Although it may have been possible to find further evidence in the vehicle, without more it was no more reasonable to believe the defendant's vehicle might contain additional documentary evidence corroborating her admission than it was reasonable to believe Gant's vehicle might contain official notice of his suspension.

### III.

The district court's suppression order is therefore affirmed, and the case is remanded for further proceedings consistent with this opinion.

Justice EID dissents.

Justice EID, dissenting.

As articulated in my dissent in a companion case issued today, I would find that the search in this case was conducted in good-faith reliance on our pre-*Gant* precedent, and that therefore the good-faith exception to the exclusionary rule applies. *See People v. McCarty*, No. 09SA161, 229 P.3d 1041, 1042–46, 2010 WL 1840822 (Colo. May 10, 2010) (Eid, J., dissenting).