The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

John Jacob McCARTY, Defendant–
Appellee.

No. 09SA161.

Supreme Court of Colorado,
En Banc.

May 10, 2010.

Pete Hautzinger, District Attorney, Twenty–First Judicial District, Christopher Nerbonne, Deputy District Attorney, Grand Junction, Colorado, Attorneys for Plaintiff–Appellant.

Peters & Nolan, LLC, Andrew J. Nolan, Grand Junction, Colorado, Attorneys for Defendant–Appellee.

Justice COATS delivered the Opinion of the Court.

The People brought an interlocutory appeal, as authorized by section 16–12–102(2), C.R.S. (2009), and C.A.R. 4.1, challenging the district court's suppression of drugs seized from a vehicle driven by the defendant. After being followed from an import store that was the object of police surveillance and being stopped for a traffic infraction, the defendant conceded buying a "pot pipe" at the store, took the as yet unwrapped pipe from his pocket, and turned it over to the police. The district court found that these circumstances did not provide the officers with probable cause to search the defendant's vehicle or justify a search of the vehicle incident to the defendant's arrest.

Under the circumstances of this case, as determined by the district court, the arresting officers lacked probable cause to support a warrantless search of the defendant's vehicle or justification for a search incident to his arrest, as that doctrine was subsequently clarified in *Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In addition, the officers' search in this case did not fall within any recognized good-faith exception to the Fourth Amendment exclusionary rule. The district court's order suppressing the drugs seized from the defendant's vehicle is therefore affirmed, and the case is remanded for further proceedings consistent with this opinion.

## I.

Following a traffic stop of John McCarty on December 19, 2008, and the subsequent recovery of a glass pipe from his person and drugs from the vehicle he was driving, he was charged with possession of drug paraphernalia and more than one gram of methamphetamine. He moved for suppression of the pipe and drugs, arguing that both were the products of an illegal stop and detention of his person and that the drugs were the product of an illegal search of his vehicle. After hearing the motion, the district court ordered suppression of the drugs but denied suppression of the pipe. Pertinent to the portions of the suppression order interlocutorily appealed here by the People, the court made the following findings and conclusions.

Officers conducting surveillance of an import store they suspected of illegal activities observed the defendant leaving the store, followed his vehicle, and stopped it a short while later for momentarily crossing a solid white center line. When he was unable to provide proof of insurance, the defendant was escorted from the vehicle and asked for permission to search it. Upon declining to give his permission, the defendant was questioned about his recent movements and confronted with police observations that conflicted with his account. In response to a direct question whether he had purchased a pipe at the import store, the defendant conceded that he had and produced from his pocket a glass pipe, which he described as a "pot pipe," unused and still in its packaging. While one of the officers remained with the defendant, the other searched his vehicle and discovered a mint tin in the center console containing suspected methamphetamine.

The district court found adequate grounds to support the stop and detention of the defendant, and although he had failed to provide proof of insurance, it found that he was not under arrest at the time he turned the pipe over to the officers. It also held,

however, that discovering a new, unused glass pipe under these circumstances did not provide probable cause to believe evidence of a crime would be found in the defendant's vehicle, and it therefore rejected the People's argument that the warrantless search of the defendant's vehicle fell within the so-called automobile exception to the Fourth Amendment warrant requirement.

For two separate reasons, the court also rejected the assertion that the search was a validly executed search incident to the defendant's arrest. First it found that possession of drug paraphernalia, a class 2 petty offense in this jurisdiction, is not an offense for which a custodial arrest is authorized. Relying on *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), which permits a full search incident to arrest only upon a custodial arrest, it therefore held that the search of the defendant's vehicle could not possibly have been a constitutionally-valid search incident to arrest for possessing drug paraphernalia. In addition, apparently because it found that the officers also had probable cause to arrest the defendant for failing to provide proof of insurance, the court noted the Supreme Court's clarification of the search incident to arrest exception in *Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), released subsequent to the search in this case. The district court held that under *Gant*, and contrary to the precedent of this court existing at the time of the search, officers may search a vehicle incident to a recent occupant's arrest under the *Chimel*[1] rationale *only* if the occupant could still access the vehicle at the time of the search, which the defendant could not. Although this second ground derived from a post-search legal development, the district court did not address the People's assertion that the exclusion of evidence was not the proper remedy for an unconstitutional search conducted in good-faith reliance on the then-existing precedent of this court.

The People immediately filed an interlocutory appeal, as authorized by section 16–12–102(2), C.R.S. (2009), and C.A.R. 4.1, renew-

ing their claim that the search was constitutionally permitted according to the automobile exception; as a search incident to arrest, even as that doctrine was clarified in *Gant;* and because the officers acted in good faith, in conformity with the then-existing case law of this jurisdiction.

**II.**

In *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court applied its search-incident-to-arrest jurisprudence to the motor vehicle context, articulating what many jurisdictions, including this one, understood to be a bright-line rule permitting a search of the passenger compartment of a vehicle incident to the arrest of a recent occupant, without regard to his actual ability to access the vehicle at the time of the search. *See, e.g., People v. Savedra*, 907 P.2d 596, 598 (Colo.1995). Following the search in this case but before the district court's suppression ruling, the Supreme Court clarified its holding in *Belton*, as well as its subsequent application of that ruling in *Thornton v. United States*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), and explained that the search of a vehicle incident to the arrest of a recent occupant can be justified only if the arrestee was unrestrained and within reaching distance of the passenger compartment at the time of the search or if it was reasonable for the arresting officers to believe that evidence relevant to the crime of arrest might be found in the vehicle. *Gant*, —— U.S. at ——, 129 S.Ct. at 1719. While this articulation of the standard admittedly added a new "evidence gathering" rationale, not derived from *Chimel*, the *Gant* majority firmly rejected any broad understanding of *Belton* as applying the *Chimel* rationale to searches beyond the arrestee's reaching distance. *Gant*, —— U.S. at ——, 129 S.Ct. at 1718–19.

■ Because the officers had probable cause to arrest the defendant for failing to provide proof of insurance and because, as even the defendant concedes, the district

1. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (authorizing searches of the area within the immediate con-

trol of an arrestee for officer safety and evidence preservation).

court erred in finding that possession of drug paraphernalia was not an offense for which one could be subjected to a custodial arrest,[2] this search would have been justified as a search incident to arrest by this court's prior broad reading of *Belton*. If, as the People contend, the exclusionary rule of evidence cannot be applied to a search conducted in good-faith compliance with the then-existing precedent of this court, the district court's suppression order cannot stand, even if the search in this case failed to comport with the dictates of *Gant*.

## A.

Although the Fourth Amendment exclusionary rule is held to apply to the states through the Fourteenth Amendment, it is neither a specific provision, nor even a necessary corollary, of the Fourth Amendment itself. *United States v. Leon*, 468 U.S. 897, 905–06, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). It is not a personal right of any aggrieved party but rather operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect. *Id.* at 906, 104 S.Ct. 3405. As such, the question whether an exclusionary sanction should be imposed in any particular class of cases is largely a matter of policy, to be resolved by the Supreme Court by weighing the costs and benefits of its application to that class of cases. *Id.* at 906–07, 104 S.Ct. 3405.

Implementing this balancing approach, the Supreme Court has limited the types of proceedings, or stages of those proceedings, at which the exclusionary rule may be applied; the parties in whose favor it may be applied; and even the purposes for which it may be applied. With regard to the kinds of executive branch conduct for which imposition of the exclusionary sanction is considered more costly than beneficial, the Court has created an exception for objective good-faith reliance on judicially-issued warrants, *see Leon*, 468

U.S. at 922, 104 S.Ct. 3405; *Massachusetts v. Sheppard*, 468 U.S. 981, 987–88, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); *see also Arizona v. Evans*, 514 U.S. 1, 16, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (recognizing "a categorical exception to the exclusionary rule for clerical errors of court employees"); for certain kinds of Fourth Amendment violations in executing those warrants, *see Hudson v. Michigan*, 547 U.S. 586, 594, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (violation of knock and announce rule); and even for sufficiently attenuated reliance on withdrawn judicial warrants that remained in the system due to executive branch negligence, *see Herring v. United States*, —— U.S. ——, ——, 129 S.Ct. 695, 698, 172 L.Ed.2d 496 (2009). It has similarly recognized an exception for objective good-faith reliance on legislation, subsequently held to be unconstitutional, designating particular conduct criminal, *see Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), or excusing the warrant requirement for non-criminal, administrative investigations, *see Illinois v. Krull*, 480 U.S. 340, 349–50, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). It has thus far not, however, recognized a good-faith exception to the exclusionary rule for reliance on prior holdings of its own from which it has subsequently departed, much less for reliance on the erroneous interpretations of its prior holdings by lower courts.

Quite the contrary, the Supreme Court has found policy considerations other than simply the costs and benefits of deterrence to be dispositive of whether criminal defendants should be entitled to the benefit of its new constitutional rulings. Although consideration of the purpose to be served by a new constitutional rule, among other individualized factors, *see* 1 Wayne R. LaFave, et al., *Criminal Procedure* § 2.11(c) (3d ed.2007) at 869–75 (discussing the "*Linkletter–Stovall*" criteria [3]), had at one time resulted in applying new extensions of the exclusionary rule only to searches conducted after their an-

**2.** *See People v. Triantos*, 55 P.3d 131, 133 (Colo. 2002); *cf. People v. Bland*, 884 P.2d 312, 320 (Colo.1994) (state statute authorizing nothing more than issuance of penalty assessment ticket for possession of a single marijuana cigarette correspondingly permitted only the level of search allowed incident to a non-custodial arrest).

**3.** *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

nouncement,[4] *see United States v. Peltier,* 422 U.S. 531, 535–42, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *Williams v. United States,* 401 U.S. 646, 649–59, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971) (plurality opinion), the Court ultimately rejected this approach to retroactivity. *See United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *see also Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). At least where a ruling extending the reach of the exclusionary rule did not represent a clear break with past precedent, the Court in *Johnson* held that it would retroactively apply to all cases that had not yet become final, emphasizing the importance of having a clear, consistent rule that deals fairly with all similarly situated defendants. *Johnson,* 457 U.S. at 554–56, 102 S.Ct. 2579. Subsequently, although not in the context of a Fourth Amendment violation, the Court also applied this retroactivity approach to rulings representing a clear break from past precedent, reasoning that the policy considerations remain the same and characterizing as "inappropriate" the differential treatment of retroactive application to convictions on direct review "based solely upon the particular characteristics of the new rules." *Griffith v. Kentucky,* 479 U.S. 314, 326, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."); *see also Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.").

Although it may not have expressly considered and rejected the good-faith exception proposed by the People, the Supreme Court

has nevertheless effectively rejected any doctrine of non-retroactivity premised on the exclusionary rule's lack of deterrent effect. A good-faith exception for reliance upon subsequently overruled Supreme Court decisions would therefore appear to be in "untenable tension" with its retroactivity precedent. *See United States v. Gonzalez,* 578 F.3d 1130, 1132–33 (9th Cir.2009). And if a lack of deterrent value in applying the exclusionary rule to searches conducted in good-faith reliance on controlling Supreme Court precedent would not excuse its application, it is difficult to conceive that the same lack of deterrent value in enforcing the rule against officers acting in good-faith reliance upon a lower court misinterpretation of Supreme Court precedent could justify that result. *Id.* But *see United States v. Davis,* 598 F.3d 1259, 1263–68 (11th Cir.2010) (concluding otherwise); *United States v. McCane,* 573 F.3d 1037, 1041–45 (10th Cir.2009) (same); *People v. Key,* No. 07CA1257, —— P.3d ——, ——, 2010 WL 961646, at *2 (Colo.App. Mar.18, 2010) (same).

■ In any event, the United States Supreme Court has made it abundantly clear that neither the reach of the exclusionary rule nor its retroactivity jurisprudence is simply a matter of constitutional construction; rather, both largely involve policy choices peculiarly within the discretion of the Court and subject to continual reassessment. *See Hudson,* 547 U.S. at 597, 126 S.Ct. 2159 ("We cannot assume that exclusion in this context is necessary deterrence simply because we found that it was necessary deterrence in different contexts and long ago. That would be forcing the public today to pay for the sins and inadequacies of a legal regime that existed almost half a century ago."). A good-faith exception to the exclusionary rule, when "tailored to situations in which the police have reasonably relied on a warrant issued by a detached and neutral magistrate but later found to be defective," has been expressly found compatible with the

---

4. Even at that time, the Supreme Court concluded that a defendant who argued for a change in the exclusionary rule must be given the benefit of a successful challenge. *See Stovall,* 388 U.S. at 301, 87 S.Ct. 1967 ("That they must be given that benefit is, however, an unavoidable consequence

of [s]ound policies of decision-making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive of counsel to advance contentions requiring a change in the law.").

retroactivity policy articulated in *Johnson.* *See Leon,* 468 U.S. at 912, 104 S.Ct. 3405. In *Gant,* however, the majority did not suggest that the good-faith exception would apply to reliance on pre-*Gant* case law, and the dissenters clearly concluded that it would not. *See Gant,* —— U.S. at ——, 129 S.Ct. at 1726 (Alito, J., dissenting) ("The Court's decision will cause the suppression of evidence gathered in many searches carried out in good-faith reliance on well-settled case law.").

Under these circumstances, we are reluctant to expand the good-faith exception to the Supreme Court's exclusionary rule beyond the limits set by that Court itself.

### B.

■ With respect to the search-incident-to-arrest exception as now articulated in *Gant,* there is no suggestion that the defendant in this case was capable of accessing his vehicle at the time of the search. The search therefore could be justified as a search incident to his arrest only if the officers had a reasonable basis to believe that evidence of the crime of arrest, or some crime for which they had probable cause to arrest,[5] might be found in the defendant's vehicle. We recently concluded that by using language like "reasonable to believe" and "reasonable basis to believe," the Supreme Court intended a degree of articulable suspicion commensurate with that sufficient for limited intrusions like investigatory stops. *See People v. Chamberlain,* No. 09SA124, 229 P.3d 1054, 1057, 2010 WL 1840823 (Colo. May 10, 2010).

■ Although the trial court did not fully appreciate the scope of offenses for which the officers had probable cause to make a custodial arrest, the ultimate question whether the historical facts found by a trial court amount to reasonable, articulable suspicion is a matter to be decided by this court. *See People v. Brown,* 217 P.3d 1252, 1255 (Colo. 2009). We conclude that being stopped for a traffic infraction immediately after leaving a suspect import store and being in possession of a recently purchased and still unwrapped and unused "pot pipe," although sufficient to

justify an arrest for possession of drug paraphernalia, is nevertheless insufficient to provide reasonable, articulable suspicion that additional evidence of that offense might be found in the arrestee's vehicle. Possession of drug paraphernalia under these circumstances was clearly insufficient to justify an arrest for possession or use of illegal drugs, and although it is perhaps conceivable that the arrestee's vehicle might contain some evidence of the possession offense for which the officers had probable cause to arrest, nothing peculiar to these circumstances supported a reasonable suspicion that any additional evidence existed, much less that it would reside in the arrestee's vehicle, rather than on his person or elsewhere. *See People v. Martinez,* 200 P.3d 1053, 1057 (Colo.2009) (investigatory stop must be based on some minimal level of objective suspicion, not merely a hunch or intuition (citing *People v. Polander,* 41 P.3d 698, 703 (Colo.2001)) ).

### C.

The People also renew their assertion that the officers had probable cause to search the defendant's vehicle for items connected to the crime of possession of drug paraphernalia and, if so, that their search fell within the automobile exception to the warrant requirement. Because the officers lacked even reasonable, articulable suspicion that the defendant's vehicle contained evidence of drug paraphernalia, a *fortiori* they lacked probable cause to believe they would find evidence of drug paraphernalia in it.

### III.

The order of the district court suppressing drugs found in the defendant's vehicle is therefore affirmed, and the case is remanded for further proceedings consistent with this opinion.

Justice EID dissents.

Justice EID, dissenting.

The majority applies the exclusionary rule in this case even though the officers who conducted the search of defendant's vehicle

---

**5.** *See Gant,* —— U.S. at ——, 129 S.Ct. at 1725

(Scalia, J., concurring).

incident to his arrest did so in good-faith reliance upon precedent of this court (and of virtually every federal appeals court) expressly permitting such a search—precedent recently overruled by the U.S. Supreme Court in *Arizona v. Gant,* ─── U.S. ───, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In other words, by applying the exclusionary rule in this case, the majority punishes the officers for *our mistake,* not theirs. In such a situation, where exclusion of the evidence seized would in no way "deter wrongful police conduct," application of the exclusionary rule is inappropriate. *Herring v. United States,* ─── U.S. ───, ───, 129 S.Ct. 695, 698, 172 L.Ed.2d 496 (2009). Accordingly, I would hold that this case is governed by the good-faith exception to the exclusionary rule. *See generally United States v. McCane,* 573 F.3d 1037, 1041–45 (10th Cir.2009) (holding that the good-faith exception applies where officers relied on circuit's erroneous pre-*Gant* jurisprudence), *cert. denied,* ─── U.S. ───, 130 S.Ct. 1686, 176 L.Ed.2d 179 (2010); *United States v. Davis,* 598 F.3d 1259, 1264 (11th Cir.2010) (same); *People v. Key,* No. 07CA1257, ─── P.3d ───, ───, 2010 WL 961646, at *2 (Colo.App. Mar.18, 2010). *But see United States v. Gonzalez,* 578 F.3d 1130, 1131–32 (9th Cir.2009) (holding good-faith exception inapplicable when officers relied on circuit's erroneous pre-*Gant* jurisprudence), *rehearing and rehearing en banc denied,* 598 F.3d 1095 (9th Cir.2010); *Gonzalez,* 598 F.3d at 1096–1100 (B. Fletcher, J., concurring in the denial of rehearing en banc); *id.* at 1100–09 (Bea, J., dissenting from the denial of rehearing en banc).

After erroneously rejecting application of the good-faith exception, the majority makes an additional error in finding that it was not "reasonable to believe" that evidence of defendant's offense of arrest—that is, possession of drug paraphernalia—might be found in the defendant's vehicle, and that therefore the evidence discovered during a search of the vehicle must be suppressed. *Gant,* however, holds that when a defendant is arrested for a "drug offense[ ]," "the offense of arrest will supply a basis" for the search because it is reasonable to believe that further evidence of the drug offense might be found in the vehicle. ─── U.S. at ───, 129 S.Ct. at 1719.

As applied here, the fact that the defendant was arrested for possession of drug paraphernalia gives rise to a common sense inference that further drug paraphernalia or other evidence of the offense of arrest might be found in the vehicle. Thus, unlike the majority, I would hold that the search of defendant's vehicle incident to his arrest for possession of drug paraphernalia was proper. For these reasons, I respectfully dissent from the majority's opinion.

I.

On the same day that the Supreme Court heard argument in *Gant,* ─── U.S. ───, 129 S.Ct. 1710, 173 L.Ed.2d 485, it heard argument in *Herring,* ─── U.S. ───, 129 S.Ct. 695, 172 L.Ed.2d 496. In *Herring,* the Court revisited the scope of the good-faith exception that it recognized in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The defendant in *Herring* visited a police impound lot to retrieve something from his impounded vehicle. Upon seeing him, an officer contacted law enforcement in a neighboring county to see if there were any outstanding warrants for his arrest. The neighboring county warrant clerk reported that there was an active arrest warrant. In the meantime, the defendant had gotten into his vehicle and started to drive away. Officers followed him, pulled him over, and arrested him. A search incident to arrest revealed drugs in his pocket and a weapon in the vehicle. Soon thereafter, it was discovered that the warrant clerk had been mistaken, and there was no outstanding warrant for the defendant's arrest. The question before the Court in *Herring* was whether the exclusionary rule should apply to exclude the drugs found in the defendant's pocket and the weapon in his car. The Court answered no.

The Court's analysis did not proceed, however, in terms of whether the specific facts fell within one of the existing categories to which it had applied the *Leon* good-faith exception to the exclusionary rule. Instead, the Court used *Leon* and other cases in which the exception had been applied to derive a framework for determining when the exclusionary rule should apply. The Court

made clear that the exclusionary rule "is not an individual right" and its application "is not an automatic consequence of a Fourth Amendment violation." *Herring,* —— U.S. at ——, 129 S.Ct. at 698, 700; *see also id.* at ——, 129 S.Ct. at 700 (noting that the Court had "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation") (citations omitted). Instead, suppression of evidence obtained in violation of the Fourth Amendment "has always been our last resort, not our first impulse." *Id.* at ——, 129 S.Ct. at 700 (citation and quotation marks omitted). As the Court noted, application of the exclusionary rule is appropriate only where the "important principles" underlying the Court's precedents are met. *Id.*

In setting out the framework for determining the applicability of the exclusionary rule, the Court first made clear that the rule "applies only where it result[s] in appreciable deterrence" of wrongful law enforcement conduct. *Id.* (citation and internal quotation marks omitted). Second, evidence will be excluded only where "the benefits of deterrence ... outweigh the costs"—in other words, where the deterrence gained by application of the rule outweighs the "toll upon truth-seeking and law enforcement objectives." *Id.* at ——, 129 S.Ct. at 700–01 (citations and quotation marks omitted). Thus, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at ——, 129 S.Ct. at 702. Applying this framework to the facts before it, the Court held that the potential for deterrence was "marginal," given that the warrant clerk's culpability did not rise to the level of "deliberate, reckless, or grossly negligent conduct." *Id.* at ——, 129 S.Ct. at 702, 704. The exclusionary rule, therefore, was inappropriate. because it did not "pay its way." *Id.* at ——, 129 S.Ct. at 704 (citation and quotation marks omitted).

Applying the framework of *Herring* to the facts of the case before us can lead to only one conclusion: the exclusionary rule is inapplicable. The officers in this case relied upon well-settled precedent of this court permitting them to conduct a search of the passenger compartment of defendant's vehicle as an "automatic" result of his arrest. As we put it in *People v. Kirk,* 103 P.3d 918, 922 (Colo. 2005):

> The authority to search a vehicle's passenger compartment incident to the arrest of an occupant *is automatic and does not depend on the facts of a particular case.* Thus, the passenger compartment may be searched after the suspect has been removed from the vehicle, even when the suspect is away from the vehicle and safely within police custody at the time of the search.

(citations omitted) (emphasis added); *accord People v. H.J.,* 931 P.2d 1177, 1183 (Colo. 1997) (citing *New York v. Belton,* 453 U.S. 454, 460–62, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)) (same); *People v. Savedra,* 907 P.2d 596, 598 (Colo.1995) (same). In searching the defendant's vehicle incident to his arrest for possession of drug paraphernalia and driving without proof of insurance, the officers in this case performed the search under the precise circumstances we had deemed permissible.

The officers in this case thus exhibited—to use the terminology of *Herring*—no "culpable" conduct whatsoever. On the contrary, they were performing their duties in exactly the fashion that we stated was permitted. Hence, in this case, the exclusionary rule would provide no deterrence value whatsoever because there was no "culpable" conduct to deter. *See United States v. Allison,* 637 F.Supp.2d 657, 672 (S.D.Iowa 2009) ("If law enforcement has acted pursuant to policies and procedures arising from an accurate understanding of [pre-*Gant* ] doctrine, what wrongful conduct on the part of the police has occurred?"); *see also McCane,* 573 F.3d at 1044 ("[A] police officer who undertakes a search in reasonable reliance upon the settled case law of a United States Court of Appeals, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct."), *cert. denied,* —— U.S. ——, 130 S.Ct. 1686, 176 L.Ed.2d 179 (2010); *Davis,* 598 F.3d at 1265 ("[A] search performed in accordance with

our erroneous interpretation of Fourth Amendment law is not culpable police conduct.").

Of course, we turned out to be wrong in our interpretation of the scope of the search incident to arrest as applied in the vehicle context. In *Gant,* the U.S. Supreme Court held that a search incident to arrest was not, as we had held, "automatic," but rather could only occur where "it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." —— U.S. at ——, 129 S.Ct. at 1714. But the important inquiry here is *who* made the mistake. The officers who conducted the search in this case did not make a mistake; we did. "To hold, as the majority does, that the good faith exception does not apply, penalizes the police officers for a decision belonging to" us; exclusion therefore "cannot logically contribute to the deterrence of police misconduct." *People v. Gutierrez,* 222 P.3d 925, 948 (Colo.2009) (Rice, J., dissenting); *see also Leon,* 468 U.S. at 921, 104 S.Ct. 3405 ("Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."). As the Court in *Herring* reiterated, "[t]he exclusionary rule was crafted to curb police rather than judicial misconduct." —— U.S. at ——, 129 S.Ct. at 701 (citations omitted). Because the officers in this case relied on well-settled (albeit ultimately erroneous)[1] precedent of this court that permitted them to conduct the search, the good-faith exception to the exclusionary rule should apply. *Davis,* 598 F.3d at 1266; *McCane,* 573 F.3d at 1045; *Key,* —— P.3d at ——, 2010 WL 961646, at *2.

The majority comes to the contrary conclusion based on the fact that "this case [does] not fall within any recognized good-faith exception to the Fourth Amendment exclusionary rule." Maj. op. at 1042; *see generally Gonzalez,* 578 F.3d at 1132 (taking the same approach); *Gonzalez,* 598 F.3d at 1096–1100

(B. Fletcher, J., concurring in the denial of rehearing en banc); *id.* at 1100–09 (Bea, J., dissenting from the denial of rehearing en banc). The majority lists the categories of cases to which the U.S. Supreme Court has applied the good-faith exception, and, concluding that the Court has yet to apply the exception to the circumstances of this case, finds that the exception cannot apply. Maj. op. at 1044. Yet the majority's categorical approach entirely ignores the framework established by the Court in *Herring,* which, as noted above, generally limits the exclusionary rule to cases where the deterrence benefits outweigh the cost of exclusion. In other words, to use *Herring's* terminology, the majority mistakenly applies the exclusionary rule "automatic[ally]" to the facts of this case without considering whether the principles underlying the rule—that is, deterrence of police misconduct—are served. Indeed, the majority does not even attempt to argue that application of the exclusionary rule in this instance would either punish culpable police conduct in this case or deter misconduct in the future.

Moreover, the majority's categorical approach fails on its own terms. The majority suggests, by the way in which it describes the categories of cases to which the Supreme Court has applied the good-faith exception, that the exception only applies in the context of warrants. *See generally* maj. op. at 1044. While the majority's analysis has some superficial appeal, it does not withstand closer analysis. Certainly the good-faith exception was first recognized in the warrant context; in *Leon,* the Court reasoned that the exclusionary rule would be inappropriate where the officers relied on a magistrate's issuance of a warrant. *Leon,* 468 U.S. at 922, 104 S.Ct. 3405. But the Court has expanded the rule well beyond reliance on a warrant. In *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), for example, the

---

1. It is important to emphasize that the officers in this case relied on well-settled precedent of this court that set forth a bright-line rule permitting the search that was conducted. *See Davis,* 598 F.3d at 1267 (good faith exception appropriate where "the permissibility of the search was clear" under "well-settled" precedent). *Compare United States v. Peoples,* 668 F.Supp.2d 1042,

1048–49 (W.D.Mich.2009) (expressing concern that applying the good-faith exception in the context of case law would be "untenable" because "reliance on case law necessarily would require an officer to extrapolate from prior scenarios and determine, in the first instance, whether the prior cases are sufficient to establish probable cause in the new matter").

Court held that the good-faith exception to the exclusionary rule would apply where the officers relied upon a state statute that authorized a *warrantless* administrative search. Similarly, the Court held in *Arizona v. Evans,* 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), that the exception applies when, by virtue of a clerical error by judicial employees, the defendant was arrested despite the fact that the warrant for his arrest had been quashed. As Justice Stevens recognized in his dissent in *Evans, Leon* "assumed the existence of a warrant," whereas there was "no warrant at all" outstanding for the defendant's arrest in *Evans,* 514 U.S. at 20, 115 S.Ct. 1185 (Stevens, J., dissenting); *see also id.* at 20 & n. 2, 115 S.Ct. 1185 (noting, in connection with *Krull,* his view that the good-faith exception is "wholly inapplicable to warrantless searches and seizures"). Similarly, there was "no warrant at all" in *Herring,* where, as noted above, the defendant was arrested due to a law enforcement employee's mistaken conclusion that there was a warrant for the defendant's arrest. *See* —— U.S. at ——, 129 S.Ct. at 698. As the Tenth Circuit concluded, the common thread among these cases is that the exclusionary rule does not hold police officers responsible for the mistakes of others, be they judges (*Leon*), legislators (*Krull*), judicial employees (*Evans*), or other law enforcement employees (*Herring*). *McCane,* 573 F.3d at 1045. In this case, as in *Leon,* the officers relied on a judicial error. As the Eleventh Circuit concluded, there is "no meaningful distinction between a magistrate judge's error in applying Supreme Court precedent to a probable-cause determination and our error in applying that same precedent to the question of a warrantless search's constitutionality." *Davis,* 598 F.3d at 1266.

The majority seems to imply that the Supreme Court—and only the Supreme Court—can determine whether the exclusionary rule should apply. *See, e.g.,* maj. op. at 1044 ("[T]he question whether an exclusion-

ary sanction should be imposed in any particular class of cases is largely a matter of policy, to be resolved by the Supreme Court by weighing the costs and benefits of its application to that class of cases."); *id.* at 1045 ("[T]he United States Supreme Court has made it abundantly clear that neither the reach of the exclusionary rule nor its retroactivity jurisprudence is simply a matter of constitutional construction; rather both largely involve policy choices peculiarly within the discretion of the Court and subject to continual reassessment."). The flaw in this logic is that by deciding that the exclusionary rule does in fact apply in this instance, the majority is making the very determination it has said should be left to the Supreme Court—but simply making it without considering the Supreme Court's *Herring* framework.[2]

The majority also argues that application of the exclusionary rule is compelled in this case because of retroactivity principles. *Id.* at 1045. But there is no "tension" between the good-faith exception and retroactivity. *See id.* (relying on *Gonzalez,* 578 F.3d 1130). New opinions of the Supreme Court apply to all pending cases. *United States v. Johnson,* 457 U.S. 537, 562, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). The case at bar was pending when the Court issued *Gant, see* maj. op at 1043, and therefore *Gant* is fully applicable here. As the majority recognizes (and as I discuss below), *Gant* reformulated the test for determining whether a search incident to arrest in the vehicle context is permissible under the Fourth Amendment, and held that the search conducted in the *Gant* defendant's case was impermissible. *See* maj. op at 1043–44. But that is all that *Gant* did. It did not hold that, or even consider whether, the exclusionary rule was the appropriate remedy for the Fourth Amendment violation that it found. As the Court has repeatedly stated, whether the exclusionary rule as a sanction is appropriate in a particular case is an issue separate and apart from whether

2. The majority only addresses the Fourth Amendment of the U.S. Constitution and does not in any way purport to apply a distinction between the Federal Constitution and the Colorado Constitution. *Compare State v. Puris,* No. 61899–7–I, 2009 WL 3723052 (Wash.App. Nov.9, 2009) (re-

jecting good-faith exception to the exclusionary rule in *Gant* context on the ground that "[u]nlike its federal counterpart, there is no 'good faith' exception to [the Washington Constitution's] exclusionary rule").

there was a Fourth Amendment violation in the first place. *See Hudson v. Michigan,* 547 U.S. 586, 591–92, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006); *Evans,* 514 U.S. at 10, 115 S.Ct. 1185; *Leon,* 468 U.S. at 906, 104 S.Ct. 3405; *Illinois v. Gates,* 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As stated in *Herring,* the exclusionary rule is not an individual right and its application does not automatically follow from a violation of the Fourth Amendment. —— U.S. at ——, 129 S.Ct. at 700. The words "exclusionary rule" do not appear in the *Gant* opinion. It is virtually impossible that the Court intended to decide the issue of whether the exclusionary rule applied *sub silentio* given that it was considering the *Herring* case at the same time it was considering *Gant.* And while it is true that, as the majority points out, maj. op. at 1045–46, Justice Alito in dissent mentioned "good-faith," *see Gant,* —— U.S. at ——, 129 S.Ct. at 1726 (Alito, J., dissenting) (noting that the Court's "decision will cause the suppression of evidence gathered in many searches carried out in·good-faith reliance on well-settled case law"), the Court majority never responded to Justice Alito's comment. In my view, a fair reading of *Gant* leads to the conclusion that the Court simply decided to leave the remedy question for another day. Importantly, as the majority acknowledges, *Leon* expressly found that the good-faith exception is entirely consistent with the retroactivity principles announced in *Johnson.* Maj. op. at 1045–46 (citing *Leon,* 468 U.S. at 912, 104 S.Ct. 3405). Application of the good-faith exception in this case is thus entirely consistent with retroactive application of *Gant. See Davis,* 598 F.3d at 1264–65; *McCane,* 573 F.3d at 1045 n. 5; *Key,* —— P.3d at ——, 2010 WL 961646, at *13. *But see Gonzalez,* 578 F.3d at 1132; *U.S. v. Gonzalez,* 598 F.3d 1095 at 1097 (9th Cir.2010) (B. Fletcher, J., concurring in the denial of rehearing en̈ banc).

In sum, because application of the exclusionary rule in this case would not serve the underlying purposes of the rule, and because application of the good-faith exception is entirely consistent with retroactive application of *Gant,* I would find it appropriate to apply the exception in this case.

## II.

Given that I would apply the good-faith exception to the search conducted in this case, I would not find it necessary to consider whether the search was justified under the Fourth Amendment principles articulated in *Gant. See People v. Altman,* 960 P.2d 1164, 1172–73 (Colo.1998). But because the majority addresses the Fourth Amendment issue after finding good-faith inapplicable, and in doing so reads *Gant* erroneously, I address the propriety of the search as well.

In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court considered the contours of the search-incident-to-arrest doctrine as applied in the vehicle context. As noted above, this court—along with many others, including Federal Courts of Appeals [3]—interpreted *Belton* as adopting a bright-line rule permitting a search of the entire passenger compartment of a vehicle incident to an occupant's arrest, even where the occupant had no access to the vehicle at the time of the search. *See, e.g., Kirk,* 103 P.3d at 918; *H.J.,* 931 P.2d at 1177; *Savedra,* 907 P.2d at 596. In *Gant,* the Supreme Court held that this bright-line understanding of the doctrine was wrong. —— U.S. at ——, 129 S.Ct. at 1721. According to the Court, a search of the passenger compartment of the vehicle could be justified only under two rationales. Under the first, a search could be conducted if the occupant was unrestrained and could reach a weapon or destructible evidence in the passenger compartment, consistent with *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *Gant,* —— U.S. at ——, 129 S.Ct. at 1714, 1719. Under the second, a search could be conducted "when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.* at ——, 129 S.Ct. at 1714. In adopting this latter rationale, the Court stated that it was "following the suggestion" in Justice Scalia's separate opinion in Thornton v. United States, 541 U.S. 615, 632, 124 S.Ct.

---

**3.** See *Gant,* —— U.S. at ——, 129 S.Ct. at 1718–19 (noting that, among Federal Courts of Appeals

decisions, a broad reading of *Belton* had predominated).

2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring in judgment), which proposed that a search of the passenger compartment could be justified on an evidence-gathering basis under some circumstances. *Gant,* —— U.S. at ——, 129 S.Ct. at 1714; *see also id.* at ——, 129 S.Ct. at 1719 ("Although it does not follow from *Chimel,* we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle.'" (quoting *Thornton,* 541 U.S. at 632, 124 S.Ct. 2127 (Scalia, J., concurring in judgment))). As the majority correctly points out, only *Gant's* "evidence-gathering" rationale is at issue in this case. Maj. op. at 1046.

Under this second rationale, the question is whether it was "reasonable" for the officers "to believe evidence relevant to the crime of arrest"—that is, possession of drug paraphernalia—"might be found in the [defendant's] vehicle." *Gant,* —— U.S. at ——, 129 S.Ct. at 1719 (citation and quotation marks omitted). The majority mistakenly answers this question in the negative based on an erroneous reading of the standard to be applied in the context of *Gant's* second rationale. Maj. op. at 1046.

Because the *Gant* Court used the terms "reasonable to believe," the majority concludes that it must have meant to adopt the standard of reasonable suspicion for investigatory stops under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Maj. op. at 1046 (citing *People v. Martinez,* 200 P.3d 1053, 1057 (Colo.2009), an investigatory stop case); *see also People v. Chamberlain,* No. 09SA124, 229 P.3d 1054, 1057, 2010 WL 1840823 (Colo. May 10, 2010) (adopting *Terry* standard). Certainly the word "reasonable" appears in both *Gant* and *Terry.* However, it is significant that the Court's opinion does not cite *Terry* in reference to the evidence-gathering rationale at all; in fact, when the Court does cite *Terry,* it does so in reference to another exception to the warrant requirement permitting "an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is 'dangerous'

and might access the vehicle to 'gain immediate control of weapons.'" *Gant,* —— U.S. at ——, 129 S.Ct. at 1721 (citations omitted). It seems highly unlikely that the Court would have cited *Terry* with reference to another exception to the warrant requirement and then somehow neglected to cite it in its discussion of the evidence-gathering rationale for a search-incident-to-arrest in the vehicle context. Instead, the Court essentially adopted Justice Scalia's separate opinion in *Thornton,* including his rationale for the search-incident-to-arrest doctrine in the vehicle context. *See, e.g., id.* (referencing "the searches permitted by Justice Scalia's opinion concurring in the judgment in *Thornton,* which we conclude today are reasonable for purposes of the Fourth Amendment"); *id.* at ——, 129 S.Ct. at 1714 ("[F]ollowing the suggestion in Justice Scalia's opinion concurring in the judgment in [*Thornton*], we ... conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle."); *id.* at ——, 129 S.Ct. at 1719 ("Although it does not follow from *Chimel,* ... circumstances unique to the automobile context also justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" (quoting *Thornton,* 541 U.S. at 632, 124 S.Ct. 2127 (Scalia, J., concurring in judgment))).

Justice Scalia's *Thornton* concurrence does not even cite *Terry,* let alone adopt its standard. Instead, the opinion concludes that a search of the passenger compartment incident to arrest may be justified, under certain circumstances, as a "more general sort of evidence-gathering search," harkening back to *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). *Thornton,* 541 U.S. at 629, 124 S.Ct. 2127 (Scalia, J., concurring in judgment). Justice Scalia noted that such a search is justified under certain circumstances because there is "a reduced expectation of privacy" in vehicles. *Id.* at 631, 124 S.Ct. 2127. He concluded that such a search would be limited to "cases where it is reasonable to believe evidence relevant to the crime of arrest might be

found in the vehicle," *id.* at 632, 124 S.Ct. 2127—the standard adopted by *Gant.*

In determining whether it would be "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle," Justice Scalia focused on the "nature of the charge." *Id.* at 630, 124 S.Ct. 2127. "A motorist may be arrested for a wide variety of offenses; in many cases, there is no reasonable basis to believe relevant evidence might be found in the car." *Id.* at 632, 124 S.Ct. 2127 (citing *Atwater v. Lago Vista,* 532 U.S. 318, 323–24, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), and *Knowles v. Iowa,* 525 U.S. 113, 118, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)). Both *Atwater* and *Knowles* involved arrests for traffic offenses that would not give rise to evidence located in the vehicle itself. *See Atwater,* 532 U.S. at 324, 121 S.Ct. 1536 (failing to wear a seatbelt, failure to fasten children in seatbelts, driving without a license, and failing to provide proof of insurance); *Knowles,* 525 U.S. at 114, 119 S.Ct. 484 (speeding). The Court in *Gant* cited *Atwater* and *Knowles* for the proposition that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." —— U.S. at ——, 129 S.Ct. at 1719. In contrast, according to Justice Scalia, where a defendant is "lawfully arrested for a drug offense," as in *Belton* and *Thornton,* it is "reasonable . . . to believe that further contraband or similar evidence relevant to the crime for which [the defendant] had been arrested might be found in the vehicle. . . ." *Thornton,* 541 U.S. at 632, 124 S.Ct. 2127 (Scalia, J., concurring in judgment). The Court in *Gant* adopted Justice Scalia's analysis, noting that in cases such as *Belton* and *Thornton,* "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." —— U.S. at ——, 129 S.Ct. at 1719. On the facts of *Gant* itself, the Court concluded that "[a]n evidentiary basis for the search was . . . lacking." *Id.* at ——, 129 S.Ct. at 1719. "Whereas *Belton* and *Thornton* were arrested for drug offenses," the Court continued, "Gant was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the

passenger compartment of Gant's car." *Id.* at ——, 129 S.Ct. at 1719 (citing *Knowles,* 525 U.S. at 118, 119 S.Ct. 484). In sum, the Court in *Gant* concluded that for some "offense[s] of arrest," such as "traffic violation[s]," there will be no reason to believe that evidence might be in the vehicle; for others, including "drug offense[s]," there will be. *Id.* at ——, 129 S.Ct. at 1722–23. In this case, the defendant was arrested for possession of drug paraphernalia—in the terms used by the *Gant* court, a "drug offense." It therefore was reasonable for the officers to believe that "further contraband" might have been found in the vehicle. *Thornton,* 541 U.S. at 632, 124 S.Ct. 2127 (Scalia, J., concurring in judgment); *see also McCloud v. Commonwealth,* 286 S.W.3d 780, 785 (Ky.2009) (holding a search proper under *Gant* because it was reasonable for police to believe that defendant's vehicle contained evidence of the offense of arrest, possession or trafficking in drugs); *State v. Cantrell,* No. 35826, —— P.3d ——, ——, 2010 WL 919314, at *8 (Idaho Ct.App. Mar.16, 2010) (holding that search of defendant's vehicle was proper under *Gant* because it was reasonable for police to believe that evidence of the offense, driving under the influence, might be found in the vehicle); *Cain v. State,* No. CA CR 09–152, 2010 Ark. App. 30, 2010 WL 129713 (Ark.Ct.App. Jan.13, 2010) (same); *United States v. Grote,* 629 F.Supp.2d 1201, 1205 (E.D.Wash.2009) (same).

The majority finds otherwise on the ground that there was "nothing peculiar to these circumstances [in the case] [to] support[ ] a reasonable suspicion that any additional evidence existed, much less that it would reside in the arrestee's vehicle, rather than on his person or elsewhere." Maj. op. at 1046. In other words, the majority requires *Terry*-style individualized suspicion that 1) additional drug paraphernalia existed; and 2) that it would be located in the vehicle itself, rather than on defendant's person or elsewhere. In my view, the majority requires too much. As the Court stated in *Gant,* where the defendant is arrested for a "drug offense[ ]," "the offense of arrest will supply a basis for" the search of the passenger compartment of the vehicle. —— U.S. at

——, 129 S.Ct. at 1719. The *Gant* Court said nothing about requiring *further* individualized suspicion beyond the fact that the defendant was arrested for a "drug offense." Indeed, the Court did not even describe the particular facts of *Belton* and *Thornton* that led to the defendants' arrests in those cases, let alone rely on those facts to derive a standard. Instead, the Court appears to have concluded that when a defendant is arrested for a "drug offense," it is simply a common sense conclusion (i.e., it is reasonable to believe) that "further contraband or similar evidence relevant to the crime for which he had been arrested might be found in the vehicle." *Thornton*, 541 U.S. at 632, 124 S.Ct. 2127 (Scalia, J., concurring in judgment).

But even if the *Gant* Court adopted a *Terry*-like reasonable suspicion requirement, as the majority suggests, the facts of this case would meet it. As noted above, the Court used *Thornton* as an example of a case that would meet its evidence-gathering standard. In *Thornton*, the officer asked the defendant, who was away from his vehicle, if he had illegal drugs "on him or in his vehicle." 541 U.S. at 618, 124 S.Ct. 2127. The defendant answered no. The officer then asked him if he could pat him down, and the defendant agreed. After the officer "felt a bulge" in defendant's front pocket, the officer again asked him if he had illegal drugs "on him." *Id.* At this point, the defendant admitted that illegal drugs were on his person, pulled them out of his pocket, was arrested, and his vehicle searched. *Id.* The facts of this case mirror those of *Thornton;* according to the majority, the defendant, who was away from his vehicle, admitted that he possessed drug paraphernalia on his person, produced it for the officer, was arrested, and his vehicle searched. Maj. op. at 1042–43. If *Thornton* meets the *Gant* standard, this case does as well.

Importantly, under my reading of *Gant*, there undoubtedly will be offenses for which a common sense "reasonable to believe" conclusion cannot be made based merely on the nature of the offense, and where particularized consideration of the circumstances surrounding the arrest will be necessary. *See,* e.g., *Megginson v. United States*, —— U.S. ——, 129 S.Ct. 1982, 173 L.Ed.2d 1288 (2009) (Alito, J., dissenting from denial of certiorari) (noting that the case "present[ed] an important question regarding the meaning and specificity of the reasonable suspicion requirement in *Gant* " where defendant was arrested on a warrant for threatening to kill his wife). But this case does not present such a scenario. In my view, we should simply conclude that, under *Gant*, because defendant was arrested for a drug offense, it was reasonable to believe that evidence of that offense might be found in his vehicle, and that therefore the search of his vehicle was consistent with the Fourth Amendment.

### III.

Because I would find that the good-faith exception to the exclusionary rule applies in this case, and because I believe the search conducted was consistent with *Gant*, I respectfully dissent from the majority's opinion.