2013 CO 66

## The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

## Shaun Michael CRUM, Defendant–Appellee.

### Supreme Court Case No. 13SA114

Supreme Court of Colorado.

November 12, 2013

---

Attorneys for Plaintiff–Appellant: Pete Hautzinger, District Attorney, Twenty-first Judicial District, Daniel P. Rubinstein, Chief Deputy District Attorney, Grand Junction, Colorado.

Attorneys for Defendant–Appellee: Robert P. Borquez, Denver, Colorado.

JUSTICE EID delivered the Opinion of the Court.

¶ 1 The People brought an interlocutory appeal pursuant to section 16–12–102(2), C.R.S. (2013) and C.A.R. 4.1, challenging the trial court's suppression of evidence discovered in a vehicle search incident to the arrest of the defendant, Shaun Michael Crum. Police officers observed Crum standing near the open rear driver-side door of a white SUV late at night in a commercial area known for high levels of drug activity. The officers saw Crum reach into the vehicle, from which he apparently retrieved a fast food hamburger wrapper. The officers approached Crum to speak with him, ran a wants and warrants check, and discovered an outstanding warrant for Crum's arrest. As Crum was being placed under arrest, he dropped the wrapper and stepped on it, attempting to crush it with his feet. The officers retrieved the wrapper, which was found to hold a baggie containing two Oxycodone pills packaged in a manner consistent with a possible intent to distribute. The officers then searched the vehicle, finding various items in the passenger compartment that led to the possession and conspiracy to distribute charges that Crum now faces. Upon Crum's motion to suppress, the trial court ruled that although the officers had probable cause to arrest Crum for possession of a controlled substance, they lacked sufficient reason to believe that the vehicle contained further evidence of possession. Consequently, the court suppressed the evidence discovered in the search.

¶ 2 Under the evidence-gathering rationale set forth in *Arizona v. Gant,* 556 U.S. 332,

129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), officers may search the passenger compartment of a vehicle where the particular circumstances give rise to a reasonable articulable suspicion that the vehicle might contain evidence of the crime for which they had probable cause to arrest. *See also People v. McCarty*, 229 P.3d 1041, 1046 (Colo.2010). As applied here, the question is whether the officers had a reasonable articulable suspicion that the SUV might contain further evidence of possession of a controlled substance.

¶ 3 We conclude that this standard was met in this case. Because the officers saw Crum reaching into the vehicle, apparently retrieving the pills that he later attempted to conceal—pills packaged in a manner consistent with possible distribution—it was reasonable for them to suspect that additional pills might be found in the vehicle. Under these circumstances, then, we find that there was a sufficient connection between the contraband in Crum's possession and the vehicle to give rise to a reasonable articulable suspicion that additional contraband might be located in the vehicle. We therefore reverse the trial court's suppression order and remand for proceedings consistent with this opinion.

## I.

¶ 4 On August 16, 2012, at 11:43 p.m., Grand Junction Police Department Officers Heil and Rayside, each in full uniform and driving marked squad cars, were searching in a commercial area in Grand Junction for a third party with an outstanding arrest warrant. As they searched the area for this other individual, they observed a white SUV parked on the side of the road, and saw Crum standing outside of the vehicle's open rear driver-side door, reaching inside the vehicle and apparently manipulating something with his hand. The officers were familiar with Crum, having contacted him on prior occasions, and though they knew that the vehicle did not belong to Crum, they knew that he frequently used it. The area where Crum was parked, moreover, was known for high levels of drug activity—in fact, Officer Heil testified that he had personally made several drug-related arrests in that area. The officers further testified that they found Crum's conduct and presence in the area at that time of night curious, and they decided to interrupt their search for the other individual in order to further investigate Crum's behavior.

¶ 5 As the officers approached Crum, he looked at them, turned around, and began to walk away from the vehicle, leaving its rear driver-side door open, while carrying a fast food hamburger wrapper. Officer Heil stopped to speak with Crum, while Officer Rayside asked another individual who was seated in the passenger seat of the SUV to exit the vehicle and speak with him. When Officer Heil asked Crum what he was doing in the area, Crum responded that he was experiencing "car troubles," though he later told the officers that he and the passenger were just "hanging out."

¶ 6 Around this time, Officer Rayside testified, another individual rode toward the scene on a bicycle, saw Crum and the police officers, and slowed down. According to Officer Rayside, the cyclist initially appeared as though he was going to get off the bicycle, but then started to turn around before apparently changing his mind and pedaling in the direction in which he had originally been travelling, looking past the officers as he rode by. Officer Rayside testified that he found the cyclist's actions to be odd, but because he and Officer Heil were already speaking with Crum and the SUV's passenger, they did not attempt to stop or question the cyclist.

¶ 7 After speaking with Crum for approximately five minutes, Officer Heil ran a wants and warrants check on Crum and discovered that there was an outstanding warrant for his arrest for failure to appear in court on a charge of possession of Oxycodone, a class II controlled substance. Officer Rayside testified that as the officers instructed Crum to put his hands behind his back to place him under arrest, Crum dropped the hamburger wrapper which he had been carrying onto the ground. Crum then stood on the wrapper, grinding it into the ground with his foot. Officer Rayside noticed that the wrapper concealed a baggie containing two pills and

collected the baggie for evidence. The pills were subsequently identified as Oxycodone. According to Officer Heil's testimony, the fact that the pills were packaged in small quantities in a baggie, rather than a prescription container, was unusual, and prompted the officers to investigate whether the pills were being separated and packaged for distribution rather than kept for personal use.

¶ 8 As Officer Heil placed Crum in the back seat of his squad car, Officer Rayside began to search the SUV. In the molding near the window of the rear driver-side passenger seat, in the area where the officers had earlier seen Crum standing and reaching into the vehicle, Officer Rayside found baggies containing a crystalline substance later identified as methamphetamine. Officer Rayside also found individually-packaged bags of marijuana, baggies containing suspected hash, several empty baggies, and a digital scale in the area of the rear driver-side passenger compartment. The baggies were similar to the baggie found in the hamburger wrapper, as well as a number of other empty baggies which Officer Heil found when he searched the passenger seat glove compartment.

¶ 9 On the basis of the evidence discovered during the search, the People charged Crum with two counts of conspiracy to distribute a schedule II controlled substance, possession of more than two grams of methamphetamine, possession of less than four grams of a schedule II controlled substance, tampering with physical evidence, possession of less than two ounces of marijuana, possession of drug paraphernalia, and five habitual criminal counts. Prior to trial, Crum moved to suppress the evidence discovered in the SUV, though he did not challenge the seizure of the hamburger wrapper or its contents. At the suppression hearing, the trial court heard the testimony of the two arresting officers, eliciting the above facts.

¶ 10 After the trial court heard Officer Heil and Officer Rayside's testimony, the People argued that the search of the vehicle was based on a reasonable articulable suspicion that the SUV might contain additional evidence of the crime of possession of a controlled substance and was therefore allowed under *Gant*. The trial court acknowledged that upon discovery of the wrapper and the baggie containing the Oxycodone pills, the officers had probable cause to arrest Crum for possession of a controlled substance. The court nevertheless disagreed that the circumstances of the case justified the search of the vehicle:

> It's not inconceivable that somebody would possess two pills and two pills only. Contrary to the prosecution's argument, I didn't hear anything about Mr. Crum's actions which ... were unique and would create a reasonable belief that he was fleeing the vehicle because he knew it contained contraband. So, what—what law enforcement knew is that his hand had been in the vehicle and he had contraband in his hands. It was reasonable to believe that—that he had gotten that contraband from inside the vehicle, but no reason to believe that there was anything else illegal in there.

¶ 11 The trial court then granted Crum's motion to suppress the evidence found in the search of the vehicle, giving rise to this interlocutory appeal.

## II.

### A.

¶ 12 In *Gant*, the United States Supreme Court considered the contours of the search-incident-to-arrest doctrine as applied to vehicles and instructed that a warrantless search of the passenger compartment of a vehicle could be justified only under two rationales. First, the Court held that a search could be conducted if the occupant was unrestrained and could reach a weapon or destructible evidence in the passenger compartment. 556 U.S. at 335, 129 S.Ct. 1710. Second, the Court held that circumstances unique to the vehicle context could justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id.* at 343, 129 S.Ct. 1710 (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring)). This case concerns application of the latter "evidence-gathering" rationale,

which, as we have held, permits searches where officers have "a reasonable basis to believe that evidence of some crime for which they had probable cause to arrest ... might be found in the defendant's vehicle." *People v. McCarty*, 229 P.3d 1041, 1046 (Colo.2010).[1]

■ Where we have had occasion to consider the scope of this second rationale, we have distinguished the Supreme Court's requirement of "a reasonable belief that evidence 'might' be found" from the more exacting requirement of "probable cause." *People v. Chamberlain*, 229 P.3d 1054, 1057 (Colo. 2010). A "probable cause" standard would require that circumstances, considered in their totality, suggest a "fair probability" that items connected to a crime "will be found at the time and place of a search." *People v. Coates*, 266 P.3d 397, 400 (Colo. 2011). We have held that Gant's use of phrases like "reasonable to believe" and "reasonable basis to believe," by contrast, indicates that the search of a vehicle incident to an arrest requires "a lesser degree of suspicion commensurate with that sufficient for limited intrusions, like investigatory stops." *Chamberlain*, 229 P.3d at 1057. We have defined that lesser degree of suspicion as a "reasonable articulable suspicion." *Coates*, 266 P.3d at 399. Consequently, a search of the passenger compartment of a vehicle incident to a defendant's arrest is justified where "the particular circumstances of the arrest in question supply reasonable articulable suspicion" that the vehicle might contain evidence of either the crime of arrest or a crime for which there is probable cause for arrest. *Id.* (citing *Chamberlain*, 229 P.3d at 1057); *McCarty*, 229 P.3d at 1046.

## B.

¶ 13 The language of the trial court's order granting Crum's motion to suppress the evidence found in the search, however, suggests that it used a very different standard. The court found, for example, that "[i]t's not inconceivable that somebody would possess two pills and two pills only" and held that the facts of this case did not "create a reasonable belief that [Crum] was fleeing the vehicle because he knew it contained contraband." The court acknowledged that there was probable cause to arrest Crum for possession of a controlled substance at the time of the search, and that it was reasonable to believe that Crum had gotten the pills from inside the vehicle, but nevertheless ruled that there was "no reason to believe that there was anything else illegal in there."

¶ 14 Contrary to the district court's reasoning, however, *Gant* does not preclude a search of a vehicle if it is "conceivable" that the vehicle might not contain evidence of the crime of arrest. Nor did the officers need to articulate reasons to believe that there *was* something illegal in the vehicle, or that Crum was fleeing the vehicle because he knew it contained contraband. Even if it is possible that the vehicle *might not* contain further evidence, the officers could still have a reasonable articulable suspicion that it *might*. Nothing more than this is required to permit a search of the vehicle. *See Coates*, 266 P.3d at 399. As applied here, then, if the facts and circumstances supplied a reasonable articulable suspicion that the SUV might contain evidence of possession of a controlled substance, a crime for which there was probable cause to arrest Crum, the search would satisfy the evidence-gathering rationale set forth in *Gant*.

■ We conclude that the facts and circumstances surrounding Crum's arrest readily supplied a reasonable articulable suspicion that there might be evidence of possession of a controlled substance in the SUV.[2] The

1. In their opening brief, the People claim that the district court incorrectly found that Crum had been arrested for the warrant alone. Instead, they assert, the officers arrested Crum both for the warrant and for the crimes of possession of the Oxycodone pills and tampering with evidence. Because the district court held that probable cause existed to arrest Crum for the crime of possession of a controlled substance prior to

the search of the vehicle, however, this distinction is unimportant to our analysis.

2. The People rely upon the language in *Gant* stating that in some cases, "the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein," 556 U.S. at 343–44, 129 S.Ct. 1710, and argue that the arrest of an occupant or recent occupant of a vehicle for posses-

most compelling circumstance in this case is the fact that the officers saw Crum reaching into the vehicle near the rear driver-side passenger compartment, from which he apparently retrieved a hamburger wrapper later found to conceal a baggie containing Oxycodone pills. While he was being placed under arrest, Crum dropped this wrapper to the ground and attempted to conceal or destroy its contents by grinding it with his foot. The trial court even acknowledged that Crum "had contraband in his hands" and that it was "reasonable to believe that ... he had gotten that contraband from inside the vehicle." Because Crum reached into the vehicle to retrieve the pills that he later attempted to conceal, it was reasonable for the officers to suspect that additional pills might be found in the vehicle. Based on these circumstances, we conclude that there was a sufficient connection between the contraband in Crum's possession and the vehicle to give rise to a reasonable articulable suspicion that additional contraband might be located in the vehicle.

¶ 15 Other circumstances gave further support for this reasonable articulable suspicion. Crum parked the SUV in a commercial area known for high levels of drug activity late at night. Though he claimed he was having "car troubles," he had been standing by the rear driver-side door when the officers first saw him, rather than by the hood or one of the wheels. Later, Crum contradicted this claim, suggesting instead that the vehicle was parked in the area because he and the passenger were just "hanging out." After reaching into the vehicle and retrieving the wrapper, Crum saw the officers, then turned and walked away, leaving the car door open. In addition, during the encounter, an individual approached the scene on his bicycle, only to turn around, reverse course, and continue again in his original direction, all the while avoiding eye contact with the officers. As the officers testified, the fact that the pills were contained in a baggie rather than a prescription container suggested that they might have been packaged for possible distribution rather than personal use. Under these circumstances, it would have been reasonable for the officers to suspect that the vehicle was parked in the area for a purpose connected with the contraband Crum attempted to conceal. These circumstances provide further support for the conclusion that the vehicle might contain additional contraband.

¶ 16 In arguing to the contrary, Crum lists various facts which, as he claims, negate any reasonable articulable suspicion that the officers might find evidence of possession of a controlled substance in the vehicle. We find none of them compelling. In fact, some of them even support the officers' suspicions. Crum's observation, for example, that the officers initially arrived in the area in search of another individual actually undermines his position, since it demonstrates that Crum's conduct was suspicious enough to catch the officers' attention even when they had other matters in mind. The fact that Crum was not driving the vehicle at the time of the encounter also bolsters, rather than allays, the officers' suspicion. Had Crum merely been passing through the area instead of being parked in a commercial area known for high levels of drug activity late at night, his behavior might have appeared less questionable. The officers knew that Crum was not the owner of the SUV, but they also knew that he frequently drove it, and could therefore reasonably believe that he had recently used the vehicle and that he might store items inside. As such, these facts offer more support for the officers' suspicions, not less. Though any one of these facts might not be enough to give rise to a reasonable articulable suspicion, taking them together, they add to the facts establishing reasonable articulable suspicion in this case, justifying the search of the vehicle.

¶ 17 Crum also relies on *Coates*, in which we held that probable cause did not justify a search of the vehicle's trunk after the underage driver was found to have a Xanax pill in his pocket, for which the driver claimed that

---

sion of a controlled substance may in and of itself provide the reasonable articulable suspicion necessary to justify a search of the vehicle incident to that arrest, without further regard to the facts or circumstances surrounding the arrest. We need not address this argument in this case because we find that the facts and circumstances in this case justify the search.

he once had a prescription. We find that case both legally and factually dissimilar. In *Coates*, we determined that because police officers sought to justify a search of the vehicle's trunk, rather than its passenger compartment, the search had to be justified by probable cause, not reasonable suspicion. 266 P.3d at 399–400 (finding it "unnecessary to determine whether … the circumstances of this case in particular … would supply the police with reasonable articulable suspicion that the vehicle might contain more drugs because the trial court's findings of fact are sufficient to establish that the officers lacked probable cause to search the vehicle in any event") (emphasis omitted); *see also Gant*, 556 U.S. at 343–44, 129 S.Ct. 1710 (finding that the evidence-gathering rationale may justify a search of the "passenger compartment and containers therein"). In this case, by contrast, the officers discovered all of the evidence at issue in the area of the vehicle's passenger compartments. Consequently, only a reasonable articulable suspicion, rather than probable cause, is necessary to permit the search. Because *Coates* required a higher standard to justify the search at issue in that case than is required here, the case is legally inapposite.

¶ 18 Furthermore, the facts of this case differ significantly from those in *Coates*. For example, in discussing the lack of probable cause in that case, we emphasized that "the pill itself was clearly a prescription medication rather than contraband … impl[ying] that the driver was the ultimate user and nothing more." *Id.* at 400. Indeed, the driver had a single pill in his pocket, for which he claimed to have once had a prescription. *Id.* at 398. Here, by contrast, the trial court acknowledged that Crum "had contraband in his hands" and that the officers were aware of this fact. Crum did not mention anything to the officers about a prescription; instead, he attempted to conceal the pills with a hamburger wrapper which he later crushed with his foot. Moreover, the pills were contained in a baggie, consistent with possible distribution. In sum, unlike in *Coates*, there was no indication in this case that the pills were merely for personal use.

¶ 19 In addition, here, unlike in *Coates*, there was a sufficient connection between the vehicle and the contraband to support a reasonable articulable suspicion that more drugs might be found in the vehicle. In *Coates*, we found that there was no "fair probability" that a search of the vehicle would lead to the discovery of additional pills. *Id.* at 400. In fact, the officer who had discovered the pill in the driver's pocket conceded in his testimony that he had no other reason to believe more drugs would be found in the vehicle. *Id.* Here, by comparison, the SUV was parked late at night in a commercial area known for high levels of drug activity, while Crum stood by the open rear driver-side door. Crum was also seen reaching into the SUV to retrieve the hamburger wrapper with the baggie containing the two pills. As noted above, the trial court acknowledged that under these facts, it was "reasonable to believe" that Crum "had gotten that contraband from inside the vehicle." Thus, unlike in Coates, there was a sufficient connection between the contraband that Crum had retrieved from the vehicle and the vehicle itself to support a reasonable articulable suspicion that the SUV might contain additional, similar contraband.

¶ 20 In sum, we conclude that the officers possessed a reasonable articulable suspicion that there might be more evidence of possession of a controlled substance in the vehicle from which Crum had initially retrieved the pills. The search therefore satisfied the evidence-gathering rationale of *Gant*. Accordingly, we conclude that the trial court erred when it suppressed the evidence seized from the SUV.

## III.

¶ 21 For the foregoing reasons, we reverse the trial court's suppression order and remand the case for further proceedings consistent with this opinion.